JOSEPHINE BURNETT & others, trustees, *vs.* COMMONWEALTH & others.

Worcester.   October 8, 1897. — November 22, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Metropolitan Water Act — Equity Practice — Taking of Right to fill Land — Sufficiency of Description of Land — Constitutionality of Statute — Sea Level — Boston Water Board Datum — "Rights" — Easement — Validity of Taking.*

If an exception to the sufficiency of an answer in a suit in equity is overruled, and no appeal from the order is taken, upon an appeal to this court from the final

. decree such exception will be considered only so far as it appears that the final decree is affected by the order overruling it.

The St. 1895, c. 488, entitled "An Act to provide for a Metropolitan Water Supply," is not in violation of the Constitution of the United States, or of this Commonwealth.

So far as this court has any judicial knowledge on the subject, the level of the sea at mean low water in Boston Harbor is a certain and stable level for determining grades or heights in the vicinity of Boston.

The "rights" which St. 1895, c. 488, in the last clause of § 4, authorizes the Metropolitan Water Board to take, in carrying out the powers and duties conferred by the statute, are rights in land.

Section 4 of St. 1895, c. 488, after enumerating the waters, water rights, lands, and other property which the Metropolitan Water Board may take by purchase or . otherwise, "any or all of the aforesaid lands to be taken in fee or otherwise, as said board may determine," concludes as follows: "Said board may take any other lands in fee, easements, rights, and other property that said board may deem necessary or desirable for carrying out the powers and duties conferred upon them by this act." *Held*, that the board was empowered, when it did not deem it necessary to take lands other than those before described in fee, to take such new easements or rights in other lands as it deemed necessary or desirable for carrying out its powers and duties.

The right taken by the Metropolitan Water Board to fill to a specified grade and perpetually to maintain the filling of certain lands, reserving to the owners thereof the right to dig and maintain below such grade necessary cellars, and to lay and maintain necessary pipes for gas, water, or drainage, in such a manner as not to affect injuriously the water in a reservoir, is a right in land which may be taken under St. 1895, c. 488, § 4.

BILL IN EQUITY, filed May 24, 1897, in the Superior Court, by the trustees under the will of Joseph Burnett, against the Commonwealth, and Henry H. Sprague, Wilmot R. Evans, and Henry P. Walcott, the commissioners constituting the Metropolitan Water Board, appointed under St. 1895, c. 488, to restrain the doing of certain acts on the plaintiffs' land in Southborough. Hearing before *Dunbar*, J., who dismissed the bill, with costs; and the plaintiffs appealed to this court.  The facts appear in the opinion.

*F. P. Goulding & C. F. Choate, Jr.,* (*W. S. B. Hopkins* with them,) for the plaintiffs.

*J. M. Hallowell,* Assistant Attorney General, for the Commonwealth.

FIELD, C. J.   This is a bill in equity, brought in the Superior Court by the trustees under the will of Joseph Burnett, against the Commonwealth and the commissioners constituting the Metropolitan Water Board, appointed under St. 1895, c. 488.   The cause, it is conceded, was heard in the Superior Court upon the

bill, and upon what is called the further answer of the defend-
ants, and upon a stipulation signed by counsel in the nature of
an agreed statement of some of the facts. A decree was en-
tered in that court, dismissing the bill, with costs, and the plain-
tiffs appealed. It appears that the plaintiffs excepted to the
" further answer " which was filed, and for ground of exception
alleged " that said answer renders it wholly uncertain whether
the defendants rely upon the taking filed by them on the fourth
day of January, 1896, or upon the taking filed by them on the
sixth day of July, 1897, if upon either, and that the rights de-
scribed in said taking, severally, are entirely different and in-
consistent with each other; and further, that it is not made to
appear whether the said taking of January 4, 1896, covers the
same area of land as that of July 6, 1897 ; and it does not ap-
pear by said answer whether the defendants claim the right to
enter upon the whole of the plaintiffs' premises, as described in
their bill of complaint, or otherwise." This exception to the
sufficiency of the answer was overruled on July 28, 1897, and on
July 31 the bill was dismissed. It does not appear that the
plaintiffs appealed from the interlocutory order overruling the
exception to the answer. Both parties, in their briefs, have
argued the case as if the plaintiffs had appealed from this in-
terlocutory order. The practice is to appeal from an interloc-
utory order if the party aggrieved desires to take the questions
of law involved in it to the full court. " Interlocutory decrees
not appealed from shall be open to revision on appeals from
final decrees so far only as it appears to the full court that
such final decrees are erroneously affected thereby." Pub. Sts.
c. 151, § 17. As the plaintiffs set down the cause for hearing
upon the bill and further answer, and the stipulation of coun-
sel, it is doubtful if this exception ought to be considered.
Exceptions to answers for insufficiency are of less importance
now than formerly, since answers to bills for relief are not
sworn to and cannot be used as evidence; still the chancery
rules of this court and of the Superior Court permit such ex-
ceptions. In the present case, we shall consider the exception
only so far as it appears that the final decree was affected by
the order overruling the exception.

The answer admits the taking of January 4, 1896, as alleged

in the bill, and a copy of the taking is annexed to the stipulation of the parties. The answer sets up a taking dated July 3, 1897, and recorded on July 6, 1897, a copy of which is annexed to the stipulation. This last taking was subsequent to the filing of the bill, which was on May 24, 1897, and the taking describes the three parcels of land in which the right to fill is taken specifically by metes and bounds; and the answer alleges that these three parcels are a part of the two parcels of land described in the first paragraph of the bill as belonging to the plaintiffs. On a hearing upon the bill and answer this allegation must be taken to be true. The papers before us do not enable us to determine whether the taking of January 4, 1896, of the right to fill certain lands "now or formerly of Joseph Burnett, adjoining the lands described in the clauses 69 and 70 of said taking by the city of Boston, recorded in said registry April 30, 1894," contains a sufficiently definite description of the lands in which the right to fill is taken, or whether the taking is void for uncertainty in the description. St. 1895, c. 488, § 5, requires a description in the statement of the taking " as certain as is required in a common conveyance of land." It does not appear when Joseph Burnett died, or what parcels of land adjoining the lands described in the clauses 69 and 70 of the taking by the city of Boston he owned at the time of the taking by the Metropolitan Water Board, or had previously owned, or whether he had ever owned any parcels. It is possible that this description might be made sufficiently certain by evidence, but no evidence is before us. The second taking on its face appears to be specific enough in its description of the three parcels of the plaintiffs' land in which the right to fill is taken.

The bill alleges as follows : " Fourth. The said respondents, by their agents and servants in the construction of their works in and upon the lands above described, as taken from said city of Boston, intend and are about to enter without right upon the adjoining land of your petitioners outside said taking, and are proceeding and about to proceed to trample down the same with men and horses and teams, and to dig thereon and to pile great quantities of earth thereon, and to destroy the vegetation, and to cut the timber standing upon the same, and are now threat-

ening to do irreparable injury thereto." This allegation the defendants admit in their answer, but from the papers in the case it does not appear that the defendants intend to enter upon any land of the plaintiffs which is outside the boundaries of the land the right to fill which was taken by the taking of July 6, 1897. The plaintiffs complain that it does not appear, from the answer on which the case was heard, whether the defendants " claim the right to enter upon the whole of the plaintiffs' premises as described in their bill of complaint, or otherwise," or " whether the said taking of January 4, 1896, covers the same area of land as that of July 6, 1897." But as it does not affirmatively appear from the papers in the case that the defendants intend to enter upon any land, for the purpose of filling it, which is not definitely described in the taking of July 6, 1897, if this is the fact, the plaintiffs should have averred it by an amendment to the bill made after the filing of the further answer, and before setting down the cause for hearing on bill and answer.

Apart from the description of the lands in which the right to fill is taken by the taking of January 4, 1896, and that of July 6, 1897, there are differences in the other rights which purport to have been taken by the two takings. The first taking is of the right to fill the lands " to grade two hundred and fifty-one (251) above the datum known as Boston Water Board Datum, with material excavated from other lands, and to fill above and upon said material to grade two hundred and fifty-two (252) above said datum with loam, and to cut down and remove all trees and other growth thereon, including in this taking all rights and easements of the city of Boston in said adjoining lands ; all said trees and other growth to be removed and all such filling to be completed within two years after the date of this taking." The second taking is of " the right at any time within two years from the date of this taking to fill said lands to grade two hundred and fifty-one (251) above the datum known as the Boston Water Board Datum, with material excavated from other lands of said Commonwealth, and at any time within said period to fill above and upon said material to grade two hundred and fifty-two (252) above said datum with loam, and perpetually to maintain said filling ; reserving, however, to the respective owners of said premises, and their respective heirs

and assigns, the right to dig and maintain below said grade whatever cellars may be necessary or reasonable in the construction of buildings thereon, and to lay and maintain such pipes as may be necessary or reasonable in the construction of buildings thereon, and to lay and maintain such pipes as may be necessary for the gas or water supply, or drainage of said lands and lands adjoining ; provided, however, that such cellars shall not be maintained and such pipes or drainage shall not be laid or used in any way so as to affect injuriously the water in said reservoir ; also the right at any time within two years from the date of this taking to cut down and remove all trees and other growth thereon."

We do not consider it important to consider these differences in the present case.  If the first taking is void because the lands of the plaintiffs are insufficiently described, or for any other reason, or if it has been abandoned, it becomes immaterial.  If both takings are to stand as valid, it is not necessary to determine in the present case in what manner they can be reconciled with each other.  It is sufficient that it does not appear that the defendants intend to enter upon any land of the petitioners, except the parcels described in the second taking, or that they intend to enter upon these parcels except for filling them in accordance with the right to fill, and subject to the reservations expressly declared in this taking.  If the second taking is valid, it will justify any of the things which, so far as now appears, the defendants intend to do upon the land of the plaintiffs.

The objections urged in argument by the plaintiffs to the legal validity of this second taking are, first, that St. 1895, c. 488, under which the taking was made, is in violation of the Constitution of the United States, and particularly of the Fourteenth Amendment, because the statute denies to the plaintiffs " the equal protection of the laws " ; secondly, that the statute does not authorize the commissioners to take such rights in land as are described in the taking; and, thirdly, that the height to which the land is to be filled is not defined in the taking with the requisite certainty.

The objection that the statute is in violation of the Fourteenth Amendment of the Constitution of the United States rests upon the different provisions of the statute for determin-

ing the damages suffered by persons whose property is taken
or injured.   There is in § 13 of the statute a provision for as-
certaining the damages generally for the taking of any land,
water, easements, or other property to which the plaintiffs as
owners of the' land described in the bill are subject in common
with others.   The method provided is by a petition to the Su-
perior Court for a jury, who are to determine the damages in
the same manner as damages for lands taken for highways are
determined.   There is a different provision in § 14, of which the
owners of certain real estate can avail themselves if it is taken
for the proposed reservoir upon Nashua River, or if it is entered
upon, used, or injured by the taking of the waters of the Nashua
River, or if the real estate is not taken, but is directly or indi-
rectly decreased in value by the doings of the board under the
act, and is situated in certain towns or parts of towns described
in the section.   This remedy is by an application to the Supreme
Judicial Court for the appointment of a commission of three dis-
interested persons to determine the damages, if the parties can-
not agree upon them.   There is in this section also a provision
that, if the owner of such real estate, or, if there is a mill thereon,
of such real estate and the machinery therein, no part of which
is taken, but which are decreased in value by the doings of the
water board under the statute, signifies his willingness to surren-
der the real estate, or the real estate and machinery, the commis-
sion may determine the value of such real estate and machinery,
and interest may be included in such value " at such rate and
for such time as the commission may deem just and equitable."
There is the further provision in this section, that any individual
or firm owning on the 1st day of April, 1895, an established
business on land in the town of West Boylston, whether the
same is or is not taken under the act, if such individual or firm
deem that such business is decreased in value by the carrying
out of the provisions of the statute, whether by loss of custom
or otherwise, may, if the parties cannot agree, have their dam-
ages determined and paid in the manner before provided in the
section.   By § 15 of the statute, it is provided that if the water
board, or any person whose property is taken under the right of
eminent domain, or entered upon or injured by the taking of
said water, is dissatisfied with the award of the commission, they

or he may claim a trial by jury, and that the board, if it so prefers, and the petitioner offers to make surrender, may pay the surrender value of property as determined under § 14, and receive a deed of the premises instead of paying the damages.

If it appeared that the differences in the mode of estimating the damages provided by the statute were purely arbitrary, it would deserve consideration whether the plaintiffs could not rightfully complain, that, although adequate provisions had been made for ascertaining and paying their damages, more favorable provisions had been made for other persons.  We could not say that an application to the Supreme Judicial Court for the appointment of a commission to determine the damages, with the further right to claim a trial by jury, would be a procedure more favorable to the landowner than the ordinary application for a jury to the Superior Court to determine the damages, if the rules of law for estimating the damages were the same in both cases.   But § 14 of the statute undoubtedly provides that, in certain cases falling within it, damages may be recovered for real estate not taken, but which directly or indirectly is decreased in value by the doings of the water board, or for a surrender of certain lands, no part of which has been taken, and the recovery · of the full value thereof, or for damages for the loss of custom to an established business, and we assume that similar damages cannot be recovered under § 13.

The powers given by the statute to the water board are intended to be ample, to enable them to construct, maintain, and operate a system of water works for the Metropolitan Water District, as defined in § 3, and for that purpose the statute authorizes the board to take, in the name of the Commonwealth, ponds, works, lands, waters, easements, rights, and other property.  ' The general plans and recommendations contained in the report of the State Board of Health to the Legislature of the year 1895 are referred to as a guide.   A reference to that report . . shows that it was contemplated to take, in some instances, parts of villages which would be submerged by the reservoirs to be constructed, and as the indirect or consequential damages suffered by landowners from the takings in different localities might be very different in kind or amount, the Legislature may have been of opinion that the different conditions exist-

ing in the different localities reasonably required different rules for estimating the damages. If the statute secures to the plaintiffs the payment of reasonable compensation for the taking of their property, according to the requirements of our Constitution, and if the provisions are the same for all persons whose lands in the same locality are taken for the same use, the statute cannot be deemed to be in violation either of the Constitution of Massachusetts or of that of the United States, because more favorable provisions for compensation have been made for persons whose lands and property are taken or injured in other localities where the damages are or reasonably may have been thought by the Legislature to be other or greater than those suffered by the plaintiffs, from the character of the occupation or of the business which in the other localities would be destroyed or injured. The different statutes which from time to time have been passed in Massachusetts for taking property for various public uses have contained many different provisions for ascertaining the damages, and the rule of damages applied by the courts has been determined in some respects by the particular language of each statute; but the provisions always have been sustained if they were found to satisfy the requirements of the Constitution. See *Rand* v. *Boston*, 164 Mass. 354; *Lincoln* v. *Commonwealth*, 164 Mass. 368. If the different provisions of St. 1895, c. 488, for ascertaining the damages of persons whose property is taken or injured, had been enacted at different times in separate statutes, it probably would not have occurred to any one to question the constitutionality of the provisions contained in any of the statutes. It is perhaps because different provisions are contained in the same statute that this objection has been urged, but, in the absence of all evidence to the contrary, it must be presumed that some reasons existed why the Legislature made the discrimination in the modes and rules for estimating the damages. We are of opinion that the statute is not in violation of the Constitution of the United States, or of this Commonwealth.

It is also argued that the datum known as the Boston Water Board Datum, which is the level of the sea at mean low water in Boston Harbor, is not a sufficiently definite level from which the grade of the filling should be measured. The case contains

no evidence upon this point, and we are asked judicially to take notice, that the level of the sea at mean low water in Boston Harbor is not a fixed or definite level from which to measure grades at a place within thirty miles of Boston. So far as we have any judicial knowledge on the subject we are of opinion that the level of the sea at mean low water in Boston Harbor is as certain and stable a level as can be scientifically employed in determining grades or heights in the vicinity of Boston. Certainly we cannot assume, in the absence of evidence, that the Boston Water Board have adopted in practice a datum for levels which is not reasonably certain.

The last question is, whether the right to fill and perpetually maintain the filling of the parcels of the plaintiffs' land, in the manner and subject to the reservations described in the taking of July 6, 1897, is a right which the Metropolitan Water Board is authorized to take by the statute of 1895, without taking the parcels of land in fee in which the right is to be exercised. The language of the statute specially relied on by both plaintiffs and defendants is the last clause of § 4. That section, after enumerating the waters, water rights, real estate, ponds, basins, reservoirs, filter beds, dams, aqueducts, conduits, pumping stations, pipes, pumps, and other property which the Metropolitan Water Board may take by purchase or otherwise, "any or all of the aforesaid lands to be taken in fee or otherwise, as said board may determine," concludes as follows: "Said board may take any other lands in fee, easements, rights, and other property, that said board may deem necessary or desirable for carrying out the powers and duties conferred upon them by this act." The parcels of land in which the right to fill has been taken are in the town of Southborough, and they adjoin certain lands described in clauses 69 and 70 of a taking by the city of Boston. This taking by the city of Boston, as the bill alleges, was made by that city through its water board, on April 30, 1894, and the lands taken, being thus held by that city, were taken by the defendants on January 4, 1896, in pursuance of § 4 of the St. of 1895. The bill alleges, and the answer admits, that the city of Boston had not, and never had, any rights or easements in the lands of the plaintiffs adjoining the lands so taken by the city. We infer that the lands taken by the city were taken in pur-

suance of St. 1894, c. 108. That statute authorizes the taking of " lands, rights in land, waters, and water rights." The last clause of § 4 of the St. of 1895 must mean by " rights," we think, rights in land, so that it must be interpreted as if it read " said board may take any other lands in fee, easements, rights in land, and other property, that said board may deem necessary or desirable for carrying out the powers and duties conferred upon them by this act."

By § 6 of the St. of 1895, it is enacted that the Metropolitan Water Board " shall forthwith construct the reservoir in Southborough already partially constructed by the city of Boston, and the dams thereof, and assume and carry out the agreement made by said city with the town of Southborough," etc.

The first contention of the plaintiffs on this part of the case is, that the easements and rights which the Metropolitan Water Board may take, under the last clause of § 4 of the St. of 1895, are the easements and rights already in existence when the taking is made, and that, as the city of Boston did not take the right to fill the parcels of land adjoining the lands it took, and as nobody but the owners of these parcels of land had the right to fill them, there was no easement or right to fill these parcels in existence which could be taken except by taking the parcels themselves in fee. We are of opinion that this is not the true construction of the clause.

When land is taken for a public use, it is ordinarily within the discretion of the Legislature to determine whether it shall be taken in fee, so that when the public use is determined the title will remain in the body taking it, or whether it shall be taken only to the extent necessary for the public use, and so long as that use continues; and a taking in the manner last described usually is called the taking of an easement in land. The taking of land for the purpose of laying water pipes in it, under many of our statutes, is a taking of an easement only. The easements and rights in land which are necessary for the proper construction and maintenance of works for the water supply of a large district, such as are contemplated by the St. of 1895, are not usually the easements which may exist between adjoining estates, whereby one is servient to the other, of which the most common is that of a right of way, but are easements and rights

peculiar to a system of collecting, storing, and preserving the purity of water and distributing it, and the intention of the last clause of § 4 of the St. of 1895 is that the water board may take other lands than those in the section before described in fee, if they deem it necessary or desirable, or may take only easements or rights in such other lands. Whether the taking of land in fee, the land being either a dominant or a servient estate, usually extinguishes easements existing between the estates, or whether, under the last clause of § 4 of the St. of 1895, the water board can take an existing easement or right in land without taking the dominant estate, need not be considered. We are of opinion that the principal purpose of the last clause of § 4 of the St. of 1895 was to empower the water board, when it did not deem it necessary to take lands in fee other than those before described, to take new easements or rights in such other lands as it deemed necessary or desirable for carrying out the powers and duties conferred on the board.

The next contention of the plaintiffs is, that, if the statute is so construed as to authorize the taking of new easements or rights in land, it must be confined to easements or rights in land of a kind actually known to the law. It may be assumed, without deciding it, that, by authorizing the taking of easements or rights in land by the clause mentioned, the Legislature did not intend to authorize the taking of easements or rights in land of a kind unknown to the law. We are however of opinion that the right taken by the taking of January 4, 1896, or by the taking of July 6, 1897, is a right in land which could have been granted and made appurtenant to the lands taken by the water board, and therefore that it is a right in land which may be taken under the statute. It is in effect a right to make and perpetually maintain a dike or mound of earth of a certain height, for the benefit of the adjoining reservoir and system of water supply. The papers before us do not disclose the purpose of the taking, but it may have been for the purpose of creating an embankment of earth to enclose the waters of the reservoir, or of preventing surface drainage into the reservoir from the surrounding lands, or of filling up low lands which might be a source of pollution to the waters. It is not contended that the filling contemplated was not properly adjudged by the water

board to be necessary or desirable for carrying out the powers and duties conferred upon the board by the statute. The contention is, that the right taken is one of which the statute did not authorize the taking except by taking the parcels of land in fee. Takings for a railroad location or for the laying of an aqueduct usually are takings of an easement, and often involve the construction and maintenance of embankments above the level of the land. A grant by deed of the right to erect and maintain a dam upon the land of the grantor, or an embankment thereon, for the benefit of the land of the grantee, is valid and creates an easement. *Cook* v. *Stearns*, 11 Mass. 533. *Francis* v. *Boston & Roxbury Mill Co.* 4 Pick. 365. *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 16 Pick. 512. *Stevens* v. *Stevens*, 11 Met. 251. *Cobb* v. *Fisher*, 121 Mass. 169. See *Ladd* v. *Boston*, 151 Mass. 585; *Newton* v. *Perry*, 163 Mass. 319; *Towne* v. *Newton*, 167 Mass. 311; *Kuschke* v. *St. Paul*, 45 Minn. 225. We have no doubt that a grant by deed from the plaintiffs to the Commonwealth of the right to fill and maintain the filling of these parcels, in the manner and subject to the reservations contained in the taking of July 6, 1897, for the benefit of the adjoining reservoir and the water supply system owned by the Commonwealth, would be a valid grant, and would operate to create a right in the nature of an easement in the three parcels, and if this right in these parcels could be granted we think it could be taken under the statute. Whether such a right could be acquired by prescription it is unnecessary to determine. The bill, therefore, should be dismissed; but, as the principal if not the sole reliance of the defendants is on a taking made after the bill was filed, no costs should be allowed.

*Ordered accordingly.*