# CHARLESTON

HAYS v. WALNUT CREEK OIL COMPANY et als.

Submitted November 17, 1914.  Decided December 8, 1914.

1  EMINENT DOMAIN—*Legislative Power—Public Service Corporations.*
    In the exercise of its power of eminent domain the State, through
    its legislature, except as limited by the Constitution, may take or
    authorize a public service corporation to take, for public purposes,
    any estate in land dictated by its sovereign will.  (p. 265).

2.  SAME—*Condemnation of Land—Rights of Railway Company—Mines
    and Minerals.*
    By plain terms of the statute, sections 18 and 22, chapter 42,
    Code 1891, and, construed in the light of correct legal principles and
    the weight and authority of adjudged cases, a railway company in
    this State, by condemnation and compliance with all the provisions
    of the law, takes an estate in fee simple absolute in the land taken,
    including the oil and gas and other minerals in and under the same.
    (p. 265).

3.  SAME—*Legislative Grant—Review by Courts.*
    Whether the granting of such an estate in fee simple absolute to
    a railway company or other public service corporation is good public
    policy, is a legislative, not a judicial, question, and one with which
    the courts have nothing to do.  (p. 269).

4.  SAME—*Land Condemned by Railroad Company—Interference With
    Right.*
    Where a railway company has thus by condemnation become
    vested with an estate in fee simple absolute in the land taken for
    public purposes, a citizen, though an abutting and former owner,
    has no right to interfere or oppose such railway company in the
    exercise of any rights acquired in condemnation.  (p. 270).

Appeal from Circuit Court, Kanawha County.

Suit by A. P. Hays against the Walnut Creek Oil Company
and others.  From decree for defendants, plaintiff appeals.

*Affirmed.*

*M. M. Robertson* and *C. J. Van Fleet,* for appellant.

*Price, Smith, Spilman & Clay,* for appellees.

MILLER, PRESIDENT:

Plaintiff by his bill seeks an accounting of an eighth of all

the oil produced from eight several wells drilled by the Walnut Creek Oil Company, lessee, on a strip of land taken by condemnation in 1892, through the lands now owned by him, by the Charleston, Clendennin & Sutton Railroad Company, for its road way, and subsequently granted and conveyed by it to the Coal & Coke Railway Company, and that he be decreed to be the owner of and entitled to one eighth of the oil produced and saved from said wells upon said right of way, or any other wells which may be hereafter drilled thereon.

On July 14, 1906, Hays leased his land, describing it as a tract of seventy five acres, for oil and gas, to the United Fuel Gas Company, and in August, 1909, this Company assigned to the Ohio Fuel Oil Company all the oil rights under said lease, retaining the gas rights.

Subsequently, March 9, 1912, the Coal & Coke Railway Company, leased to the Walnut Creek Oil Company, on the usual terms, "for the sole and only purpose, and with exclusive right to drill and operate for petroleum oil and gas", a strip of land, including the strip taken by condemnation through the land then owned by M. W. Young, plaintiff's predecessor in title.

The Walnut Creek Oil Company entered under this lease and drilled the wells and produced the oil now in controversy.

By the judgment of condemnation, in accordance with sections 18 and 22, chapter 42, Code 1891, showing compliance by the condemnor with all of the provisions of these sections, it was ordered that "the legal title to the land described in said Report is therefore absolutely vested in fee simple in said applicant." The language of said section 18, after the provisions relating to the report of the commissioners on the verdict of the jury, and payment of the sum assessed as damages, is: "Upon such payment the title to that part of the land so paid for, shall be absolutely vested in fee simple in the applicant, except that in case of a turnpike or other road (not including, however, a railroad) the right of way only shall be so vested."

Said sections 18 and 22, in force when said proceedings were had, were amended by chapter 68, Acts 1891, and the proviso then added to section 18, and the addendum to section

22, shed light on the proper construction to be given thereto. The proviso to section 18 is as follows: "Provided, That a railroad company desiring to construct a bridge, viaduct or tunnel may, as to all or any part of the real estate sought to be taken for that purpose, describe in its application an estate or interest therein less than a fee; and with respect to the same, may proceed as in other cases; and upon payment therefor, such estate and interest as is stated and described in the application, shall vest in the applicant. But when less than a fee is taken, in assessing damages the commissioners and jury shall take into consideration the actual damage that is done or that may be done to the fee, by the construction of such bridge, viaduct or tunnel."

Another provision of the Code of 1891, section 43a. I, of chapter 29, is also pertinent. "And any person through whose lands a railroad company has acquired a right of way by purchase or condemnation, and has taken possession of the same, such person may have the number of acres so acquired for such right of way deducted from the whole number of acres in the tract of land, and the same shall be transferred and charged to the railroad company until such time as the railroad is constructed and assessed by the board of public works, under section sixty-seven of chapter twenty-nine of the code, and when such railroad is so assessed by the board of public works, such right of way shall be stricken from the land books, and be no longer assessed hereunder."

Said section 18, as amended by Acts of 1897 and 1907, now has this provision: "Provided, that when an estate or interest less than a fee is taken by a railroad company for any part of its railroad, the assessor shall assess the value of said real estate, as if taken in fee, against such party condemning less than a fee, and the provisions of section forty-three (a) of chapter twenty-nine of the code of one thousand eight hundred and ninety-one, shall apply to such cases." .

Upon the pleadings and proofs the sole question presented for decision is, whether by these provisions of the statute law of this state and the proceedings of condemnation had by the condemnor thereunder, the railroad is entitled to an absolute fee simple estate in the land condemned, as the Walnut Creek

Oil Company and its lessor contend, or only a base or conditional fee—an interest less than a fee simple absolute, as the plaintiff contends.

Taking the plain language of the statute there would seem to be no room for construction, or controversy as to what the legislature meant by an estate "absolutely vested in fee simple in said applicant", unless as the applicant may now do, under the statute as amended in 1897 and 1907, by so stating in its application, propose to take less than a fee, and the judgment be accordingly. In Virginia, under a statute practically the same as ours before the amendments referred to, the Supreme Court held that an interest less than a fee could not be taken in condemnation. *Charlottesville* v. *Maury,* 96 Va. 383; *Roanoke City* v. *Berkowitz,* 80 Va. 616. The second point of the syllabus in the latter case is: "Corporations condemning land under Code 1873, chapter 56, section 11, must take and pay for the fee-simple, and not merely an easement, except it be a turnpike company."

Eminent domain being an attribute of sovereignty, unlimited by the Constitution, it cannot be controverted that the State, through its legislature, in the exercise of its high prerogative, may take or authorize a public service corporation to take, any estate in land dictated by its sovereign will. The only constitutional limitation on the power is that private property shall not be taken or damaged for public use without just compensation, and when taken by a corporation for internal improvement not until just compensation has been paid or secured to be paid. If authority were needed to support these fundamental principles of government, our own and the decisions of other states are replete with a statement of them. *West Virginia Transportation Co.* v. *Volcanic Oil & Coal Co.,* 5 W. Va. 382; *Cemetery Ass'n.* v. *Redd,* 33 W. Va. 262; *Railroad Co.* v. *Foreman,* 24 W. Va. 662; *Charleston & Southside Bridge Co.* v. *Comstock,* 36 W. Va. 263; *Painter* v. *St. Clair,* 98 Va. 85; *Alexandria, etc., Ry. Co.* v. *Alexandria, etc., R. R. Co.,* 75 Va. 780; *Hope* v. *N. & W. Ry. Co.,* 79 Va. 283, 289; *Wilburn* v. *Raines,* 111 Va. 334.

It cannot, however, be denied, controlled largely by varying provisions of local statutes, that courts have differed as to

what estate vests in public service corporations taking land by condemnation for public purposes. In some states only an easement is authorized. In others the statutes on the subject leave the question in doubt. Where the language of the statute will bear that construction, courts, as a general rule, seem disposed to leave the fee in the land owner. *Mott* v. *Eno,* (N. Y.) 74 N. E. 229, 233. For example, in Vermont, where the statute provided that a railroad company should be "seized and possessed of the land" taken, not specifying the particular estate, it was held to take only an easement. *Quimby* v. *Vermont Central R. R. Co.,* 23 Vt. 387. Other illustrations are shown in 2 Lewis on Eminent Domain, section 451, (3rd ed.). And in the same section, referring to a Pennsylvania decision and the statute of that State, this writer quoting from the court, says: "The grantee takes what the act gives and no more. If the act gives an absolute estate, and compensation is provided on this basis the whole title may be acquired. If it only gives the right to use and occupy, the grantee only takes a conditional fee or easement, terminable on the abandonment of the use for which the land was appropriated. The appropriation of land under the power of eminent domain does not give a fee simple estate therein in the absence of express statutory language to that effect, but only the right to use and occupy the land for the purpose for which it is taken."

On the extent of interest which the legislature may authorize to be taken, Mr. Lewis, 2 Lewis on Eminent Domain, section 448, says: "In the absence of any constitutional restraint, it rests with the legislature to say what interest or estate in lands shall be taken for public use. The whole matter thus being in the discretion of the legislature, it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken, according to its views of the requirements of the grantee and the demands of the public good." The doctrine of this text is supported by the many decisions cited in the note, and others. We especially refer to 15 Cyc. 1020; *U. S. Pipe-Line Co.* v. *Delaware, L. & W. R. R. Co.,* (N. J.) 42 L. R. A. 572; *Sweet* v. *Buffalo, N. Y. & P. R. R. Co.,* 79 N. Y. 293, 299, 300; *Brooklyn Park Com-*

*missioners* v. *Armstrong,* 45 N. Y. 234, 6 Am. Rep. 70; *Smith* v. *Hall,* 103 Iowa 95; *Roanoke City* v. *Berkowitz, supra; Burnett* v. *Commonwealth,* 169 Mass. 417; *Malone* v. *City of Toledo,* 34 Ohio St. 541; *Eldridge* v. *City of Binghamton,* 120 N. Y. 309; *Fairchild* v. *City of St. Paul,* 46 Minn. 540; *Sweet* v. *Rechel,* 159 U. S. 380; *De Varaigne* v. *Fox,* 7 Fed. Cases, No. 3,836; *Gilbert* v. *Mo., K. & T. Ry. Co.,* 185 Fed. 102; *Sherman* v. *Sherman,* 23 S. Dak. 486, 122 N. W. 439.

On principle and in the face of these authorities, we do not see how it is possible for us to cut down and limit the plain language of our statute to a mere easement or conditional or base fee in the land taken. No matter what such a right might be called, such a construction would render the estate a mere right of way or easement. The language of the statute in force when the land in controversy was taken and the subsequent amendments referred to make clear the legislative intent, when called for, to invest in the condemnor a fee simple absolute. In taking the land the condemnor must pay full value for the land taken without offsets for benefits, and in addition damages to the residue less special benefits, if any, not general benefits, accruing by the construction of the railroad, or other work of internal improvement. The condemnor, therefore, contrary to the fact in some states, apparently in Missouri for instance, pays full value for the land taken and consequential damages. Why should he not take a fee simple estate in the land? See the Missouri case of *Kellogg* v. *Malin,* 50 Mo. 496, 500, a case much relied on by appellant's counsel. The character of the consideration for the land taken seems to be the basis of the decision in this case, and in the decision of some other states, where violence is done, by construction, to the terms of the statute. While, as ruled in *Cincinnati, C., C. & St. L. Ry. Co.* v. *Simpson,* (Ind.) 104 N. E. 301, Syl. 10, another case relied on by appellant, where a mere right of way is granted a railway company the owner of the fee remains the owner of the mineral, and may make any use thereof, not inconsistent with the rights of the railway company, it follows as a natural corollary that if the fee simple absolute in the land is taken no

such mineral rights remain in the condemnee, and so the case is not in point here.

The exact point we have for decision was distinctly reserved and not decided in *Uhl* v. *Railroad Co.*, 51 W. Va. 106. That case involved the construction of a contract for a right. of way, not an estate taken by the railway company by condemnation. True, Judge BRANNON volunteered his personal opinion, on the question now before us, but one by which he would not feel bound, if, when presented and fully considered, he should be convinced he was in error.

Whether the granting of an estate in fee simple absolute to a public service corporation, such as a railroad, is good public policy, is a legislative not a judicial question. It is a subject with which the courts have nothing to do. *Varner* v. *Martin,* 21 W. Va. 534; *City of Roanoke* v. *Berkowitz, supra; Burnett* v. *Commonwealth, supra; U. S. Pipe-Line Co.* v. *Delaware, L. & W. R. R. Co., supra.* In the latter case it is said: ''The power of the legislature to endow companies organized for public purposes with the capacity to acquire lands under the right of eminent domain is undisputed. Grants of this character, like all public grants, are to be strictly construed; what is not plainly given is withheld. The rule for the construction of public grants in strictness has never been extended beyond these principles. Wherever the legislature has given in plain terms that which the company has the capacity to take, the court is not justified in frittering away the legislative grant by denying the legal effect of words of technical signification contained in it, when on a reasonable construction there is nothing in the subject-matter or context which would prevent the grant so construed from taking effect. * * * * The words in this legislative grant are entirely inappropriate to an easement. They are senseless unless applied to such an estate as, in a legal sense, is comprehended in the term 'land', whereof the unqualified use and possession are obtained for the legitimate purpose of the railroad company. * * * * * * It is within the power of the legislature, in authorizing land to be condemned for a public use which may be permanent, to determine what estate therein

shall be taken, and to authorize the taking of a fee, or any less estate, in its discretion. Where a statute authorizes the taking of a fee, it cannot be held invalid, or that an easement only was acquired thereunder, on the ground that an easement only was required to accomplish the purpose which the legislature had in view. That is a legislative, and not a judicial, question. *Sweet* v. *Buffalo, N. Y. & P. R. Co.,* 79 N. Y. 293, 299, 300; *Brooklyn Park Comrs.* v *.Armstrong,* 45 N. Y. 234, 6 Am. Rep. 70.''

Assuming then that the railway company took the fee simple estate in the land taken for railroad purposes, can it be interfered with by the present suit? If it took the fee in the land it took title to the coal, oil, gas and all other minerals and mineral rights thereunder, for an estate in fee simple is the highest estate known to the law, and carries with it everything within or belonging to it, including oil and gas, for oil and gas found therein are parts of the land and go with it. Such an estate is untrammeled with conditions. *Yeager* v. *Town of Fairmont,* 43 W. Va. 259; Tiedeman on Real Property, section 36; *Wilson* v. *Youst,* 43 W. Va. 826; *Williamson* v. *Jones,* 39 W. Va. 231; *Stuart* v. *Pennis,* 91 Va. 688, 691; 2 Blackstone Com., 17-19; 2 Minor's Inst. 4; *Virginia Coal & Iron Co.* v. *Kelly,* 93 Va. 332, 336, 24 S. E. 1020.

It is suggested that the railway company is without power and authority to operate the property for oil and gas. That is not a question presented by the record. If it has title to the land the plaintiff has no right to complain. If it is violating its charter powers, that is a subject for state action, not for the individual, though owning abutting lands.

For the foregoing reasons we are of opinion to affirm the decree, and will so order.

*Affirmed.*