## DETERMINED BY THE

# SUPREME COURT OF APPEALS.

## OF

# WEST VIRGINIA

---

## CHARLESTON.

---

FLEMING et al. v. THE MONONGAHELA RAILWAY COMPANY.

Submitted February 19, 1918. · Decided March 5, 1918.

1. EMINENT DOMAIN—*Condemnation—Description.*

   Where by condemnation land is taken ·and adjudged to a rail- road company for railroad purposes by metes and bounds, and with reference to a certain plat or plan thereof filed with the petition, the street or alley as laid down on said plat and called for in the judgment will control, and not some other street of the same name, previously projected and platted through the land, but not opened up, used, or accepted by the public by public authority. (p. 2).

2. JUDGMENT—*Res Judicata—Adjudication in Condemnation Pro- ceeding.*

   And such a judgment is res adjudicata of all matters involved, or that properly should· have been involved, in such suit or pro- ceedings, and binds and estops all parties thereto and their privies in estate in any subsequent suit between them. (p. 4).

3. EMINENT DOMAIN—*Judgment—Impeachment—Maps and Plats.*

   And such judgment being in no way ambiguous, all maps, plats,. or opinion evidence of witnesses tending to contradict or impeach the same should be rejected as illegal and improper. (p. 4).

4. SAME—*Condemnation—Damages—Lateral Support.*

   The damages awarded the owner in such condemnation suit or- proceeding should not be considered as covering his right of lateral support for the part not taken, subsequently removed by excava- tions done on the land taken, unless the purpose to so deprive him of such right plainly appeared in the petition or some plat or profile of the proposed work, plainly evidencing such purpose, or

the damages were so assessed after the work of removing such lateral support had been done.  (p. 6).

5. SAME—*Railroad Use—Right of Lateral Support.*

   Land so acquired by a railway company for public purposes is subject to the same burden of lateral support as lands of private persons, unless it appears in some way that such right was lawfully taken away and compensation in damages made therefor. (p. 6).

Error to Circuit Court, Marion County.

Action by John W. Fleming and others against the Monongahela Railway Company.  Verdict and judgment for plaintiffs, and defendant brings error.

*Reversed and remanded for new trial.*

*W. S. Meredith,* and *Cox & Baker,* for plaintiff in error.

*Tusca Morris,* and *Harry Shaw,* for defendants in error.

MILLER, JUDGE:

The action is in case for the alleged unlawful entry by defendant upon plaintiffs' land adjoining land owned by it, and doing damages thereto by making deep cuts and excavations thereon and for removing the lateral support thereto to which they were lawfully entitled.

There was a verdict and judgment for plaintiffs for $5,375.00, to which judgment the defendant sued out the present writ of error.

Upon the trial plaintiffs proved as a part of their case the record of the verdict and judgment in a proceeding in condemnation against them whereby defendant, as successor, acquired its right and title to the adjoining land, and wherein the original and amended petition with survey and plat exhibited therewith showing by metes and bounds the location and boundary of the land adjudged to petitioner in said proceedings, and wherein the damages recovered by plaintiffs herein for the 0.97 acres taken was $8,900.00, and which was actually paid by petitioner as so adjudged.

The two principal questions now presented, and which so far as we can see are inclusive and conclusive of all other questions involved here are: First, whether the land so con-

demned, and the title to which was by virtue of the statute in such cases provided, became vested in the railway company, covers the land invaded by the defendant; and Second, whether the damages awarded by the jury and paid according to the judgment in condemnation included damages for removing the lateral support to the adjoining land of plaintiffs not taken and for which recovery is sought in the present suit.

As described in the amended petition and plat filed therewith and the judgment in the condemnation proceedings the land condemned and transferred thereby to the railway company was as follows: "All of that certain parcel of land situate and lying in the District of Union Independent, in the City of Fairmont, in the County of Marion and State of West Virginia, and more particularly described as follows, to-wit: Beginning at Sta. 277-92.9 the point where the located center line of the Pricketts Branch of the Buckhannon and Northern Railroad crosses the line between John Fleming et al and Geo. Lilley; thence with said line S. 54° 30′ W. 23 feet, more or less, to a corner to John Fleming, et al and Geo. Lilley, in the line of Thomas Rubble; thence with the line between John Fleming et al and Thomas Rubble, John Phillips and T. Wilber Hennen, S. 35° 53′ W. 280 feet, more or less, to a corner to John Fleming et al and T. Wilber Hennen; thence with the line between said Fleming et al, and Hennen, N. 66° 36′ W. 124 feet, more or less, to the center of Merchant Street; thence with the center line of Merchant St; S. 21° 27′ W. 40 feet to the line of the Buckhannon and Northern Railroad Co. and C. E. Harden; thence with said line S. 66° 36′ E. 259.8 feet, more or less, to the West side of Diamond Street; thence with the West side of Diamond St. N. 31° 41′ E. 216 feet and N. 40° 12′ E. 61 feet, more or less, to the line of Geo. Lilley; extended; thence with said line N. 50° 30′ W. 105 feet, more or less, to the place of beginning, containing .97 acres more or less" and as described in the amended plat filed in lieu of the map filed with the original petition.

On the first of the questions presented the contention of the plaintiffs is that regardless of the literal calls in the petition, plat and judgment of condemnation, defendant was lim-

ited in the calls for the west side of Diamond Street to the line of Diamond Street as laid down on a certain plat or plan of a proposed addition to said City of Fairmont, made in 1903, by J. Miles Prickett, surveyor. But it is clearly shown that for the most part Diamond Street as laid down .on this plat, except for a short distance at the southerly end thereof, was merely projected through the enclosed lands of plaintiffs and that even at the time of the judgment of condemnation in 1914, said map or plat of said proposed addition had never been recorded, or the land opened up, or the plan of said addition accepted by the city, but that the land remained enclosed as a field without other improvements thereon, except one house and a barn and one or two small out buildings, as when platted, and it is not clear that defendant or any of its agents had any knowledge of said plat.

It is not contended that the lines or boundaries of Diamond Street, as laid down on the plat filed in the condemnation suit, are coincident with the lines of Diamond Street on the plat or plan of the proposed addition made by Prickett, surveyor, in 1903. Indeed, it is plainly apparent from the calls for courses and distances, and from the evidence of the surveyors and of other witnesses that they are not, except for the distance of some sixty feet at the southerly end of said street bounding a cul-de-sac therein, and for which distance the call is S. 40° 12' W. or N. 40° 12' E. 61 feet more or less; thence S. 31° 41' W. or N. 31° 41' E. 216 feet to the Harden line, showing an angle in the street, whereas the corresponding west line of Diamond Street, as laid down on the plat of said Prickett made in 1903, is a straight line run substantially on the first call, and the land in controversy lies between these two divergent lines representing the western line of Diamond Street as called for in the two plats, and bounding the triangular plot in dispute, covering about one tenth of an acre.

That the defendant is entitled to hold the land and all the land adjudged to it, or its predecessor, in the condemnation suit on the principle of res adjudicata is elementary law, and that this principle is applicable to final judgment in condemnation has been distinctly decided by this court. *B. & O. R. R. Co.* v. *P. W. & Ky. R. R. Co.*, 17 W. Va. 812; *Blake* v.

*Ohio River Railroad Co.*, 47 W. Va. 520. This question of estoppel by judgment is elaborately argued in the briefs of counsel from all angles of observation, and it is not controverted by counsel for plaintiff, except perhaps on the theory of ambiguity in the description of the land condemned; but we think their position on this theory is unfounded. There is no ambiguity in the judgment or on the face of the record thereof. The question is simply whether the western line of Diamond Street, as called for in the judgment, is a straight line for the entire length thereof on the bearing N. 40° 12' E. or after the distance of 61 feet runs at an angle to the first line on a bearing N. 31° 41' E. as called for in the judgment. We think the plat and judgment of condemnation are conclusive and that plaintiffs are estopped and concluded by that judgment. How can there be any question on this proposition? And that the western line of Diamond Street called for is located on the ground substantially as claimed by defendant, is fully established by the record and proofs in the case. And in so far as the instructions given and refused on this question, and especially plaintiffs' instruction number six, given, we hold them to have been erroneously given or refused, as the case may be, and we will not undertake to deal with these instructions individually. If the plaintiffs had desired in the condemnation suit to limit the defendant to Diamond Street as proposed on their plat made in 1903, they should have done so on the trial of that action; not having done so, they can not now be heard to deny the rights of defendant as determined by the judgment in that suit.

It follows as a necessary sequence that all maps or plats and all opinion evidence of witnesses admitted over defendant's objections for the purpose or calculated to prove title or to impeach the verity of said judgment of condemnation or to vary or change the lines or location of the land condemned from those called for in the judgment of condemnation, were erroneously admitted, and should be rejected on the new trial to be awarded; and if said plats are proper for any purpose they should be limited strictly to that purpose, and not allowed to influence the jury on any other point in issue. Such opinion evidence of a surveyor or other witness

as to the true location of a boundary line is inadmissible. *Mylius* v. *Raine-Andrew Lumber Co.,* 69 W. Va. 346.

The second question, relating to damages to the residue of plaintiffs' land and for lateral support is fraught with more difficulty. The evidence shows that defendant made deep excavations up to the western line of said Diamond Street bounding the land taken in condemnation, and ranging in depth from a few feet to twenty seven feet, thereby removing the lateral support to plaintiffs' adjoining land, and that as a result erosion had set in, and large quantities of earth had fallen out of said Diamond Street into said excavations, thereby injuring or destroying Diamond Street, and also doing damage to the residue of plaintiffs' land and lots abutting thereon, and for which they seek to be indemnified.

The position of defendant's counsel is that all such consequential damages were necessarily covered and included in the judgment of condemnation, and that as it is not alleged or proven that such consequential damages were inflicted by any unskillful or negligent manner in the construction of said railroad or other improvements, or in the operations thereof over the lands condemned, and whereby plaintiffs were damaged, good cause of action is not shown. Neither the petition for condemnation nor any surface or profile map exhibited therewith shows the particular use to which the petitioner proposed to appropriate said land nor the extent of any proposed excavation thereon, except that the petition does allege that it was intended to use the same for the purpose of constructing, maintaining, and operating its said railroad, for side tracks, siding switches, stations and freight facilities, and for other necessary purposes connected with the business of said railroad. As the land taken and the residue thereof was situated on a hill side, the part not taken lying above that taken, and all sloping westward toward the river, it may be reasonably assumed that the plan and purpose of the railway necessarily contemplated the grading of the land and the making of some excavations thereon, but can we say that such use and injury to the lateral support

of the land not taken were necessarily contemplated and compensated in the verdict of the jury and the judgment thereon for damages?

We do not think so. Certainly not unless the proceedings disclosed such a purpose, or as in *Traction Co.* v. *Windom*, 78 W. Va. 390, the work on the land taken has been done at the time the damages are assessed, and the purpose thereby disclosed. And we decided in *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co.*, 75 W. Va. 423, point 6 of the syllabus, that damages resulting to the residue of the land not taken, from trespasses thereon or from the negligent or unskillful manner of doing the proposed work, are not recoverable in condemnation, but constitute the basis of a separate and independent action. Depriving the owner of lateral support not disclosed in the proceedings and causing his adjoining land to fall in, constitutes a trespass and a new invasion of his right, damages for which is compensable in a new and independent cause of action and as not being covered by the damages reasonably contemplated in the original taking of his land. True, as shown by Mr. Lewis, in 2 Lewis on Eminent Domain, (3rd ed.) chapter 24, the weight of authority in point of number of decisions at least seems to be against these views, but we are disposed to agree with him that in point of reason as well as authority the rule should be as indicated. He says, in section 824, of said chapter: "It not infrequently happens that, in the construction or improvement of highways and railroads, excavations are made so that the soil of the adjoining owner gives away and slides into the excavation. Some cases, and perhaps a majority, hold that there can be no recovery in such cases. These cases proceed upon the theory that the right so to undermine the soil at any time when necessary to the proper constructing of the works was acquired and paid for at the time of the original taking. On the other hand, there are a number of cases which hold that, where land is taken for public use, the right of support for the adjoining soil is not taken, but the owner retains such right and the works must be constructed so as not to interfere with that right, or further compensation must be made. For reasons already stated in a prior section,

it seems to us that the latter cases are founded upon the better reason, and upon a more just and correct appreciation of the rights of the respective parties." And for his criticism of the cases per contra and his reason for the rule contended for, see sections 819 and 820. See, also, 1 Lewis on Em. Dom., sections 126, 139, and 234. In the latter section, quoting from *Damkoehler* v. *Milwaukee,* 124 Wis. 144, 151, it is said: "The right of a landowner to have his property protected against an excavation which will cause it to subside is a part of his property in the land, alike in nature and importance to the right of user and exclusion, and the deprivation of the right is a taking of property as much as an actual appropriation of the soil." See, also, *Kunst* v. *City of Grafton,* 67 W. Va. 20. Finally on this subject the language of Mr. Lewis in said section 820 is strictly in accord with our views: "There is no reason why a railroad, in purchasing or condemning property for its use, should be held to acquire anything more than would be required by a private individual purchasing the same property for the same use. A man may build and operate a railorad without any authority from the legislature, if he does so upon his own land, and he may purchase land for that purpose. If one individual should convey to another a strip of land to be used for a railroad, there would be a release of all damages resulting from the operation of the road in a reasonable and proper manner. But in constructing the road the purchaser would be bound at his peril not to do any actionable injury to the adjacent land, either by depriving the soil of its support, by interfering with the flow of running streams, or otherwise. The purchaser would in all respects be subject to the law of adjoining proprietors and of the maxim, *sic utere tuo ut alienum non laedas.* So with a railroad when it acquires a right of way through a tract of land; it becomes an adjoining proprietor with the owner of the tract, with precisely the same rights and duties with respect to such owner as though the strip of land had been acquired by an individual for ordinary use, except the unqualified right of operating the road in a reasonable and proper manner."

Enough has been said to show the propriety or impropriety

of the rulings of the court on the evidence, the interrogatories rejected, and of the remaining instructions given and refused, and to guide court and counsel on the new trial, and our conclusion is to reverse the judgment and award the defendant a new trial.

*Reversed and remanded for new trial.*