301 S.E.2d 178

**Leo J. SIGNAIGO, Jr.**

v.

**N & W RY. CO., etc., et al.**

**No. 15011.**

Supreme Court of Appeals
of West Virginia.

Dec. 15, 1982.

Dissenting Opinion March 10, 1983.

McGraw, J., dissented and filed opinion.

548

William D. Levine, Marshall & St. Clair, Huntington, for appellant.

J. Strother Crockett, Tutwiler, Crockett, LaCaria & Murensky, for appellees.

PER CURIAM:

In this appeal from the Circuit Court of Mingo County, we are asked to determine whether a railroad company acquired the minerals underlying a trackway when it condemned that trackway in 1929. The circuit court held that the railroad acquired a fee simple interest. The appellant contends the circuit court erred in this finding since the railroad had not specifically sought a fee simple interest in its condemnation application. We affirm the lower court.

The appellant, Leo J. Signaigo, Jr., instituted this action in the Circuit Court of Mingo County to recover the value of natural gas extracted by a lessee of the Norfolk and Western Railway Company from a well drilled on a strip of land traversing his property. The undisputed facts, as stipulated by the parties, are that by deed dated November 19, 1969, the appellant acquired the tract through which the disputed strip runs. The strip was condemned in 1929 by the Guyandotte and Tug River Railroad Company in an action instituted against the appellant's predecessors-in-title.

The Guyandotte and Tug River Railroad Company later transferred its interest in the strip to the Norfolk and Western Railway Company. In 1972 the Norfolk and Western leased the minerals under the strip to Iron Horse Petroleum Company. Iron Horse subsequently assigned the rights to Great Basins Petroleum Company. In 1973, Great Basins, without obtaining the appellant's permission, drilled a gas well on the strip. In 1975 Great Basins began extracting gas from the well. The appellant, claiming that he owned the minerals, instituted this action to recover the royalties due from the well.

Certain records of the 1929 condemnation proceeding are included in the record on appeal. They show that even though the Guyandotte and Tug River Railroad Company did not specifically indicate that it was seeking a fee simple interest in its application, the trial court's final order clearly stated that such an interest was awarded. The record also indicates that the appellant's predecessors-in-title were awarded $15,000 for the property condemned, which consisted of 5.72 acres.

The appellant argues that since the condemnation application did not specifically request a fee simple interest, only a right-of-way could have been granted in view of general condemnation law that restricts the amount to be taken to that which is necessary for the public use. The appellee, on the other hand, argues that because the final order in the condemnation proceeding expressly stated that a fee simple interest was awarded, it obtained such interest which includes the minerals. The appellee also points out that under our prior condemnation statutes and case law interpreting them that where a railroad petitions to condemn and does not seek to acquire less than a fee, it is deemed to have acquired the fee.[1]

In Syllabus Point 2 of *Hays v. Walnut Creek Oil Co.*, 75 W.Va. 263, 83 S.E. 900 (1914), we construed W.Va.Code, Ch. 42, § 18 (1891),[2] which contained substantially similar language to that found in Ch. 42, § 18 of the 1923 Code, which was in effect at the time of the 1929 condemnation proceedings, and concluded:

"By plain terms of the statute, sections 18 and 22, chapter 42, Code 1891, and, construed in the light of correct legal principles and the weight and authority of adjudged cases, a railway company in this State, by condemnation and compliance with all the provisions of the law, takes an estate in fee simple absolute in the land taken, including the oil and gas and other minerals in and under the same."[3]

■ Later in *Baltimore & Ohio Railroad Co. v. Bonafield's Heirs*, 79 W.Va. 287, 90 S.E. 868 (1916), the Court was even more explicit as to the meaning of the 1891 condemnation statute, stating in Syllabus Point 4:

"In condemnation proceedings by a railroad company, wherein it does not allege in its petition that it desires less than a fee in the land to be taken, and commissioners are appointed and report what amount is a fair and just compensation to the landowners, and the applicant pays into court the amount so ascertained, title, in fee, to the land described in its petition and plat filed therewith, as necessary for its purposes, vests in it immediately, and the land-owners' compensation must be ascertained as of that time."

■ Thus, at the time of the 1929 condemnation proceeding, we had two cases that construed language almost identical to that of the 1923 condemnation statute to mean that unless a railroad specifically sought something less than a fee in its condemnation application it obtained the fee. This statutory interpretation came about because of several key passages in W.Va.Code, Ch. 42, § 18 (1923). The first, near the beginning of the statute, states

---

1. At the time of the 1929 condemnation, W.Va. Code, Ch. 42, § 18 (1923), was in effect and its relevant language was:
   "[T]he sum so ascertained with legal interest thereon from the date of the report or verdict until payment, may be paid by the applicant to the persons entitled thereto or into court; *upon such payment, the title* to that part of the land so paid for, *shall be absolutely vested in fee simple* in the applicant, except that in case of a turnpike, or other road (not including, however, a railroad), the right-of-way only shall be so vested; provided, that a railroad company desiring to construct a bridge, viaduct, tunnel or any part of its railroad ... may as to all or any part of the real estate sought to be taken for that purpose, describe in its application an estate or interest therein less than a fee, and with respect to the same may proceed as in other cases; and upon payment therefor, such estate and interest as is stated and described in the application shall vest in the applicant." (Emphasis added)

2. The pertinent portion of W.Va.Code, Ch. 42 § 18 (1891) is:
   "Upon such payment the title to that part of the land so paid for, shall be absolutely vested in fee simple in the applicant, except that in case of a turnpike or other road (not including, however, a railroad), the right of way only shall be so vested; *Provided,* That a railroad company desiring to construct a bridge, viaduct or tunnel may, as to all or any part of the real estate sought to be taken for that purpose, describe in its application an estate or interest therein less than a fee; and with respect to the same, may proceed as in other cases; and upon payment therefor, such estate and interest as is stated and described in the application, shall vest in the applicant." (Emphasis in original)

3. *See* note 1, *supra.*

that upon payment of the amount ascertained to be due "the title to that part of the land so paid for, shall be absolutely vested in fee simple in the applicant." Immediately following this language is an exception: "[E]xcept that in case of a turnpike, or other road (not including, however, a railroad), the right of way only shall be so vested." Clearly, this language excepted public authorities which sought condemnation for turnpikes or roads from obtaining fee simple interest, as upon their payment a right-of-way only was vested. However, the bracketed language within the exception excluding "a railroad" was a definite indication that the Legislature intended to exclude railroads from the right-of-way limitation.

Finally, the statute provides that a railroad (or other enumerated companies) "may as to all or any part of the real estate sought to be taken ... describe in its application an estate ... less than a fee ... and upon payment therefor, such estate ... shall vest in the applicant." This third key provision gave a railroad company the discretionary right to take less than a fee by describing in its condemnation application an estate less than a fee. This is the only statutory provision that mentions what is to be stated in the application concerning the estate to be taken.

Thus, we believe the appellee is correct that the statutory design as it relates to the railroad's condemnation in 1929 is controlled by the law set out in Syllabus Point 4 of *Baltimore & Ohio Railroad Co. v. Bonafield's Heirs, supra*, that unless the railroad requested a lesser estate it will be deemed to have obtained the fee.

This explains why the condemnation application in this case did not specifically mention the interest sought. The railroad conceived that under the then existing law by not asking for an estate less than the fee, it acquired the fee. This is borne out by the final order which stated that: "[I]t is hereby ordered that the title to the land so taken and paid for as described in the

amended petition ... is hereby absolutely vested in the said Guyandotte and Tug River Railroad Company, a corporation, the applicant, in fee simple." We also have the fact that the condemnation payment was $15,000 for 5.72 acres which in view of the year the condemnation occurred suggests that a fee simple interest was taken. Moreover, none of the respondents in the 1929 proceeding took an exception or otherwise appealed the final order.[4]

In consideration of the foregoing and having a regard for the settled construction placed on our former condemnation statute by our prior cases, we are reluctant to change that construction. Such construction was a part of our condemnation property law prior to the 1929 proceeding and to alter it now would undoubtedly throw into question other property titles obtained under our former condemnation statute. We are reluctant to create such confusion in our property law. This Court in *In Re Proposal To Incorporate Town of Chesapeake*, 130 W.Va. 527, 536, 45 S.E.2d 113, 118 (1947), spoke to the applicability of *stare decisis* in adhering to former case law even though it may be of questionable validity:

"We do not mean to be understood as contending for the application of the rule of *stare decisis* to all cases, as we are fully advised of the changes which come about requiring the overruling of cases decided under different conditions, or cases wherein, in the opinion of the Court, a plainly unsound ruling has been made. But we are of opinion that, where property or other substantial rights have been acquired on the strength of court decisions, and where to overrule such decisions would create confusion and lead to litigation ... the doctrine should be applied. It was applied in *Walker v. West Virginia Gas Corporation*, 121 W.Va. 251, 3 S.E.2d 55, and the reasons stated there apply to this case."

Here, we are presented with a case that involves a 1929 condemnation proceeding

---

**4.** The appellees did not raise the question of *res judicata* and consequently we do not discuss it. *See Fleming v. Monongahela Railway Co.,* 82

W.Va. 1, 95 S.E. 819 (1918); 27 Am.Jur.2d *Eminent Domain* § 449 (1966).

and a condemnation statute that no longer exists.[5] We cannot say that our two earlier opinions were unsound in their interpretation of this statute. The condemnation proceeding ended with a final order that clearly gave a fee simple interest to the appellees. This order together with a plat of the property was recorded in the County Clerk's office and indexed in the deed books under the names of the various parties to the proceeding. Any purchaser such as the appellant would have had record notice of the fee simple interest. Given these considerations, we cannot conclude that the trial court erred in finding that the railroad acquired a fee simple interest in the 1929 condemnation proceeding.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Mingo County.

Affirmed.

McGRAW, Justice, dissenting:

The majority has misinterpreted the facts and ignored long-standing principles of constitutional law in its decision awarding the railroad company a fee simple interest in its right of way. The record below indicates that in 1929 the railroad company sought to condemn the appellant's property solely for the purpose of constructing and operating its railroad. There is no evidence of record that the oil and gas underlying the property was considered as an element of value in the condemnation proceedings. Indeed, it appears that in ascertaining the just compensation for the condemned land the commissioners did not consider the value of the underlying minerals. The majority thus permits the railroad company to develop and reduce to ownership oil and gas for which it has not paid, in direct contravention of our constitutional prohibitions against the taking of property for public use without just compensation. U.S. Const. amend. V; W.Va. Const. art. III, § 9.

Moreover, the majority fails to address the question of the unconstitutionality of the statute under which the railroad company proceeded authorizing the automatic taking of a fee estate unless a lesser estate is sought. It is universally recognized that private property can constitutionally be taken by eminent domain only for a public use. 2A *Nichols on Eminent Domain* § 7.1 (1981). *See, e.g., State ex rel. McMillion v. Stahl*, 141 W.Va. 233, 89 S.E.2d 693 (1955); *Fork Ridge Baptist Cemetery Ass'n v. Reed*, 33 W.Va. 262, 10 S.E. 405 (1889); *Baltimore & O.R. Co. v. Pittsburgh, W. & K.R. Co.*, 17 W.Va. 812 (1881). *See also Handley v. Cook*, 162 W.Va. 629, 252 S.E.2d 147 (1979) (McGraw, J., dissenting). It necessarily flows from this principle "that no more property can be taken by eminent domain than the public use requires . . . ." 3 *Nichols on Eminent Domain* at § 9.2[2]. *See Annot.*, 6 A.L.R.3d 297, at §§ 4, 5 (1966). This rule applies both to the amount of property to be acquired and to the nature of the estate or interest acquired in the property. Thus, "[i]f an easement will satisfy the public needs, to take the fee would be unjust to

**5.** In the 1931 revised Code, the provision authorizing a fee interest unless some lesser interest was specifically sought was removed and W.Va. Code, 54-1-8 (1931), now provides:

"Any corporation, or body politic, authorized to acquire private property for public use under the provisions of this chapter, may acquire an estate in fee simple, or any lesser estate therein. As to any land in which a railroad company shall acquire an estate less than a fee, for the construction of any part of its railroad, and as to any land in which any other condemnor shall acquire an estate less than a fee and in the use made of such lands shall deprive the former owner of the possession thereof and the right to cultivate and graze the same, such lands shall be assessed for taxation against the condemnor and his successor in title the same as if the tract had been appropriated in fee; and the payment of the taxes thereon by such condemnor in any case shall inure to the benefit of the holder of the estate in the land not condemned and appropriated, and shall preserve the same from forfeiture as to him."

The appellant did not argue in the trial court nor here that the 1923 Code provision was unconstitutional because it permitted an automatic fee estate unless something less was sought, thereby controvening the actual need restriction. 3 *Nichols on Eminent Domain* § 9.2[2]; Annot., 6 A.L.R.3d 297, 300 (1966); Comment, *The Public Use Limitation*, 82 W.Va.L.Rev. 357 (1979).

the owner, who is entitled to retain whatever the public needs do not require ...." 3 *Nichols on Eminent Domain* at § 9.2[2].

While the statute under which the condemnor was proceeding authorized railroad companies to take a fee interest in condemned property, that statute must be read in light of our constitutional provisions proscribing the deprivation of property without due process of law. U.S. Const. amend. V; W.Va. Const. art. III, § 10. To permit a condemnor under color of law to take private property which is unnecessary to a public use is a deprivation of property without due process of law. Thus, "when an easement is all that is required for the public use, it is not competent for the legislature to authorize the taking of the fee ...." 2A *Nichols on Eminent Domain* § 7.223[1]. *See generally Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 34 S.E.2d 348 (1945). As this Court stated in *Varner v. Martin*, 21 W.Va. 534, 549 (1883), with respect to the taking of property for a private use: "Such an act if passed by the Legislature would not in its nature be a law, but would really be an act of robbery; the exercise of a power not conferred on the Legislature."

Understandably, the majority does not argue that the extraction of oil and gas is a necessary public use of land condemned "for railroad purposes." The majority chooses instead to base its decision on the doctrine of *stare decisis,* and a reluctance to change prior interpretations of our condemnation law. I am of the belief that the doctrine of *stare decisis* cannot be invoked to validate an unconstitutional deprivation of property. I would therefore reverse the decision of the lower court.