In the Matter of:

PROPOSAL TO INCORPORATE THE TOWN
OF CHESAPEAKE, KANAWHA COUNTY,
WEST VIRGINIA

(No. 9964)

Submitted September 3, 1947.   Decided October 14, 1947.

*W. Hayes Pettry,* for petitioners-appellants.

*Fitzpatrick, Strickling & Marshall,* and *Kay, Casto & Amos,* for protestants-appellees.

*Spilman, Thomas & Battle, Howard R. Klostermeyer, McCabe & McCabe,* and *Charles P. McCabe, Sr., amici curiae.*

528

Fox, President:

On July 20, 1946, a group of citizens residing in the community of Chesapeake in Kanawha County, West Virginia, petitioned the Circuit Court of Kanawha County to issue a certificate of incorporation to the Town of Chesapeake as a municipal corporation, under the provisions of Article 2 of Chapter 8 of the Code, embracing territory specifically described in said petition. From said petition, it appears that the population of the territory proposed to be incorporated was less than two thousand, and, so far as we have been able to observe, the requirements necessary to justify the granting of such charter by the circuit court, have been fully complied with, and such compliance duly alleged in the petition. Upon the filing of the petition, The Chesapeake and Ohio Railway Company, the owner of a substantial amount of property within the area to be incorporated, appeared and filed its demurrer to the said petition, thereby admitting for the purposes of said demurrer, the several allegations of said petition. The points of demurrer were three in number:

"(1) Sec. 39 (a) of Article 6 of the Constitution of West Virginia provides that the Legislature shall provide by general laws for the incorporation and government of cities, towns and villages and shall classify such municipal corporations upon the basis of population into not less than two nor more than five classes. That pursuant to such constitutional mandate the Legislature of West Virginia enacted enabling legislation which is now Chapter 8 (a) of the Code of West Virginia. This legislation classifies municipalities into three classifications but did not include communities with population of less than two thousand. Since the Legislature failed to make provision for the incorporation of communities of less than two thousand such incorporations cannot now be made.

"(2) Article 5 of the Constitution of the State of West Virginia provides that the legislative, executive and judicial departments of the State shall be separate and distinct so that neither shall exercise the powers properly belonging to either

of the others. The petition filed herein, which purports to be filed under the provisions of Article 2 of Chapter 8 of the Code of West Virginia, would require this Court to act in a legislative capacity. Therefore any action of this Court in purporting to incorporate the community of Chesapeake would be violative of Article 5 of the Constitution.

" (3) Article 2 of Chapter 8 of the Code of West Virginia is unconstitutional as violative of Article 5 of the Constitution of West Virginia."

It appears from the record that a number of citizens within the area of the proposed municipality joined in said demurrer. The court sustained the demurrer, and, on April 23, 1947, dismissed the petition. On June 16, 1947, we granted this writ of error.

A memorandum was filed by the trial court, and made a part of the record, from which it appears that said petition was dismissed on the general ground that Article V of the Constitution, properly interpreted, makes unconstitutional and void Section 8 of Article 2 of Chapter 8 of the Code, in that it requires of a circuit court the performance of a purely legislative function. Other questions were discussed therein, but from said memorandum, and the argument of counsel, it is quite clear that the decision of this case must depend upon the question of whether the delegation by the Legislature to circuit courts of the power to incorporate towns, having a population of less than two thousand, is a violation of the constitutional provision aforesaid.

This presents an interesting question and was first raised in this Court in the case of *In re Town of Union Mines*, 39 W. Va. 179, 19 S. E. 398, wherein it was held that "Chapter 47 of the Code, in relation to the incorporation of cities, towns, and villages, in so far as it confers on the Circuit Court functions in their nature judicial and administrative, although in furtherance of the legislative department of the State government, is constitutional and valid." In the body of the opinion, prepared by Judge Dent, it is said: "In discharging these functions, the Cir-

cuit Court does not act under the judicial branch of the government and is not subject to its supervision, except by mandamus or prohibition in a proper case, but acts as a part of the legislative branch of government under the express authority of the Constitution and is subject to its supervision and control only, however, by impeachment or amendment or repeal of the law." It then goes on to say: "Hence its action in discharging these legislative judicial functions cannot be reviewed by this Court by a writ of error or other ordinary appellate writ, notwithstanding their judicial character." The *Union Mines* case was followed by the case of *Elder* v. *Incorporators of Central City,* 40 W. Va. 222, 21 S. E. 738, in which it was held: "Chapter 47 of the Code, in relation to the incorporation of cities, towns and villages, in so far as it confers on the circuit court functions in their nature judicial, and administrative, although in furtherance of the power of the legislative department of the state government, is constitutional and valid." And in the body of the opinion it is said: "This statute itself erects the local body of citizens into a municipal corporation upon their bringing themselves within its provisions and upon complying with its terms, all of which are specific and fixed therein * * *; and whether the facts thus required exist in the particular case the Circuit Court, after due notice to all concerned and an opportunity to be heard against the application, ascertains and determines. This is, at least, an administrative or quasi-judicial function, which the circuit court may be authorized to perform." In that case the writ of error was dismissed as improvidently awarded, by a majority of the Court, on the ground that this Court had no jurisdiction in a matter merely quasi-judicial. The case of *Bloxton* v. *McWhorter, Judge,* 46 W. Va. 32, 32 S. E. 1004, was in prohibition, in which it was sought to prohibit the circuit court from issuing a certificate of incorporation. It was there held: "In deciding upon the sufficiency of such proofs the court was exercising the legitimate powers conferred upon it by the statute; and, having jurisdiction of the subject matter, prohibition will not lie."

It was further held that "And in entering the order directing the clerk of said court to issue a certificate of the incorporation of such city, town, or village, after deciding upon the sufficiency of said proofs, the court was performing a merely ministerial duty, as it had no discretion after being satisfied with the proofs, and prohibition will not lie."

At this point it seems proper to discuss the origin of the statute on which the decisions above referred to were based. Chapter 47 of the Code of 1868 covers the incorporation of towns and villages, and, after making certain preliminary requirements, Section 9 provided: "Upon the filing of such certificate and upon satisfactory proof that all the provisions of the foregoing sections of this chapter have been complied with, the circuit court shall, by an order entered of record, direct the clerk of said court to issue a certificate of the incorporation of such town or village, in form or in substance as follows: * * *." This was carried into Section 9, Chapter 92, Acts of the Legislature, 1882, and remained so until by Section 9 of Chapter 41, Acts of the Legislature, 1901, it was changed and made to read as follows: "Upon the filing of such certificate and upon satisfactory proof that all the provisions of the foregoing sections of this chapter have been complied with, the circuit court may, at its discretion, by an order entered of record, direct the clerk of the said court to issue a certificate of the incorporation of such city, town or village, in form or in substance as follows: * * *."

It will be noted that one of the arguments used in support of the decisions in the cases above referred to, was the fact that the only function of the circuit court was to ascertain whether the necessary preliminary requirements to a certificate of incorporation had been met, and that the circuit court had no discretion, and was performing only an administrative duty in support of the legislative intent and purpose. It is apparent that after the enactment of Chapter 41 of the Acts of the Legislature, 1901, the circuit court became vested with a discretion as to

whether such certificate of incorporation should issue, even though the statutory requirements had been met. This question was discussed at some length by Judge Poffenbarger in *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715, and the Court came to the conclusion that the amendment to the statute did not call for any change in its former holdings, and this was also the holding of the Court in *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872, in which it was held that discretion vested in such courts by Sections 2 and 9 of Chapter 47 of the Code, was administrative and judicial, not legislative, and that said sections did not violate Article V of the Constitution of this State, requiring the legislative, judicial and executive departments to be kept separate and distinct. This was a *quo warranto* case, and the question of a writ of error from the circuit court to this Court in such a case was apparently not raised.

The holdings of the earlier cases that, while the circuit court could properly act in the matter of the incorporation of towns with a population of less than two thousand, there could not be a resort to this Court because the matter was at most a quasi-judicial one, and this Court could only deal with matters of a judicial nature, creates some confusion of thought with us. Logically, it would seem that the application of the same principle to the cases in the circuit court would have operated to deny jurisdiction. If we follow those decisions, we would dismiss this writ of error as improvidently awarded. However, we do not think that is the prevailing rule at this time. It appears to have been departed from in the case of *West* v. *West Virginia Fair Association,* 97 W. Va. 10, 125 S. E. 353, in which Judge Lively discussed the former holdings of the Court and said: "Whether the proper procedure has been followed, we will not stop to discuss; the case is here, and should be adjudicated without further costs," and then proceeded to decide the case. The theory that this Court can only entertain matters judicial in their character has been, by later decisions, somewhat relaxed. The development of administrative law, the creation of ad-

ministrative departments headed by the public service commission, the workmen's compensation commissioner, the road commissioner, the unemployment compensation director, the health commissioner, the state tax commissioner, and many other branches and departments of the State Government, wherein broad administrative powers are delegated, with the right of appeal to the circuit courts, and to this Court, has developed the theory that, in one form or another, whether through original or appellate jurisdiction, this Court will consider matters quasi-judicial in their nature. This question was discussed in *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11. We there said: "More recently, on the theory of the exercise of quasi-judicial power by administrative agencies, the practice of permitting appeals or writs of error from the findings of administrative officials, boards and commissions is clearly recognized by our decisions," citing *Spurdone* v. *Shaw, Judge,* 114 W. Va. 191, 171 S. E. 411; *State ex rel. Board of Education of Williams Dist.* v. *Martin,* 112 W. Va. 174, 163 S. E. 850; *Quesenberry* v. *State Road Commission,* 103 W. Va. 714, 138 S. E. 362; *Reynolds Taxi Co.* v. *Hudson, Judge,* 103 W. Va. 173, 136 S. E. 833; *Ellis* v. *State Road Commission,* 100 W. Va. 531, 131 S. E. 7. "All of these cases recognize the distinction between 'judicial power' and 'quasi judicial power.' Whether there is a justification for the use of the latter term, and whether in lieu of permitting appeals and writs of error to the courts on that theory, we should resort to the old system under which, generally speaking, direct proceedings in court were required to set aside, or question, the actions of administrative boards and commissions, need not be decided. Apparently the law is settled in favor of the use of the appeal method on the theory that duly constituted administrative boards and commissions do sometimes exercise quasi judicial power, and that, on that theory, there can be brought into play what is called judicial power." Therefore, even if the circuit court was acting only in a quasi-judicial capacity in refusing to award the certificate of incorporation in the case at bar,

we think that, under our recent holdings, the petitioners had the right to seek a writ of error in this Court.

It cannot be doubted that the cases cited and discussed above clearly sustain the power of circuit courts to grant certificates of incorporation to towns with a population of less than two thousand. The first of those decisions was in the year 1894, the last in 1912, so that, for more than fifty years, such power in circuit courts has been recognized. We are now asked to change the rule thus announced on the ground that in certain cases decided by this Court in recent years, we have more strictly interpreted the requirements of Article V of the Constitution of this State as preventing the Legislature from conferring upon courts powers not in their nature judicial. The new and strict rule was first announced in *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 159 S. E. 834. There a commission was established to pass upon applications for licenses to construct water power dams in the rivers of this State. The act made the governor a member of the Public Service Commission, for the purpose of passing upon such applications, then provided for an appeal from rulings of the commission to the Circuit Court of Kanawha County and an appeal to this Court. This act was held unconstitutional on the ground that "The Legislature cannot commit to the judiciary powers which are primarily legislative," and Article V of the Constitution was applied. In *Sims* v. *Fisher,* 125 W. Va. 513, 25 S. E. 2d 216, it was held that "Article 4, Chapter 117, Acts of the Legislature, 1941, relating to the sale of lands for the benefit of the school fund, so far as it attempts to require of circuit courts, and this Court, the performance of administrative and non-judicial functions is unconstitutional." This case had to do with the sale of delinquent and forfeited lands in a proceeding clearly designated by the act as administrative. In *State* v. *Huber, supra,* the Legislature attempted to confer upon circuit courts the power to pass upon the revocation of licenses for the sale of nonintoxicating beer, and the sections of the act conferring such power were declared to be unconstitutional,

under the provisions of Article V of the Constitution. It is unnecessary to discuss here the reasoning upon which these cases are based.

We will not attempt to reconcile the decisions pertaining to the incorporation of towns by circuit courts with the opinions expressed in the cases last cited above. We think that, in their reasoning, they are in sharp conflict, and, in our opinion, had the principle of the *Hodges* case been applied to the case of *In re Town of Union Mines, supra,* a different decision would have been made. But this does not settle the issue in the pending case. Aside from any arguments that might be advanced in favor of the holding of this Court in the *Union Mines* case, and other cases which followed it, we must consider the grave consequences which, in all probability, would ensue were these cases to be now overruled, and a different interpretation of Article V of the Constitution applied. We know, as a matter of common knowledge, that since the year 1894, a period of great growth of population and development has occurred in this State, a very large number of towns have been incorporated under the provisions of what was Chapter 47 of the Code prior to the Code of 1931, and now included in our present Code as Chapter 8. We know, too, that these towns have granted franchises to various public utility corporations; issued bonds which are now outstanding; laid assessments for paving and sewer projects; and in many other ways have granted rights and privileges to persons, firms and corporations, based upon the authority of a supposed legally constituted municipal corporation. It may be said that as to bond issues, holders would be protected under the provisions of Code, 13-1-27, but a holding that circuit courts, under the Constitution, never had power to grant a certificate of incorporation to a town with a population of less than two thousand, is to say that such incorporation was void from the beginning; and it is well known that no reliance can be had upon a void action or proceeding. The theory of a *de facto* government might be resorted to in some instances, but not all. To overrule these former

decisions would probably result in numerous suits and actions in which charters of incorporation of towns, heretofore believed to be legal in every respect, would, be called in question and held for naught. Then, in the *Hodges* case, this Court expressly held that the decisions theretofore made on the matter of the incorporation of towns and certain tax appeals, should not be disturbed. These decisions have always been recognized as exceptions to what, in recent years, we have come to believe is the sound rule as to the separation of powers, and we assume these exceptions to be based on broad grounds of public policy, and to avoid the unsettling of municipal government in this State.

The holding of this Court in the case of *Town of Union Mines, supra,* and the cases which followed that case, have created in this State something akin to what we term a rule of property, and they have furnished a strong foundation for the application of the doctrine of *stare decisis.* A simple statement of this rule will be found in Black's Law Dictionary, 3d Ed., wherein it is stated that it means: "To stand by decided cases; to uphold precedents; to maintain former adjudications, * * *. The doctrine of *stare decisis* rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority." Its further purpose is "To adhere to precedents, and not to unsettle things which are established." This doctrine is discussed by Judge Johnson in the case of *Clark* v. *Figgins,* 27 W. Va. 663, and also in *Marguerite Coal Co.* v. *Meadow River Lumber Co.,* 98 W. Va. 698, 127 S. E. 644. See also 1 Kent's Commentaries 477, 1 Cooley's Constitutional Limitations, 8th Ed., 108.

We do not mean to be understood as contending for the application of the rule of *stare, decisis* to all cases, as we are fully advised of the changes which come about requir-

ing the overruling of cases decided under different conditions, or cases wherein, in the opinion of the Court, a plainly unsound ruling has been made. But we are of opinion that, where property or other substantial rights have been acquired on the strength of court decisions, and where to overrule such decisions would create confusion and lead to litigation, and where no serious public or private consequences would result from following even an unsound ruling, the doctrine should be applied. It was applied in *Walker* v. *West Virginia Gas Corporation,* 121 W. Va. 251, 3 S. E. 2d 55, and the reasons stated there apply to this case. We do not believe it wise to overturn the rule announced in the case of *In re Union Mines, supra,* although we do not argue for the soundness of that ruling, because of the later rulings of this Court, mentioned above. We are further led to this conclusion, because the future incorporation of towns, with a population of less than two thousand, is wholly within the power of the Legislature, under the provisions of Section 39 (a) of Article VI of the Constitution of this State, known as the "Home Rule Amendment." In view of the general attitude of this Court, with respect to the separation of power, the Legislature could, if it so desired, make other provision for the incorporation of cities, towns and villages, by a statute prospective in its effect, and thus avoid the consequences of judicial actions which would effect the same purpose, but which could not be made prospective only, but must, in the very nature of things, make illegal all municipalities operating under circuit court charters of incorporation.

Other questions raised upon the record require consideration. The contention is made that the enactment of Chapter 56, Acts of the Legislature, 1937, enacted under the Home Rule Amendment aforesaid, operated to destroy the right of circuit courts to incorporate towns of less than two thousand population, under the provisions of Article 2 of Chapter 8 of the Code. We do not think this contention can be sustained. The Home Rule Amendment reads as follows:

"No local or special law shall hereafter be passed incorporating cities, towns or villages, or amending their charters. The legislature shall provide by general laws for the incorporation and government of cities, towns and villages and shall classify such municipal corporations, upon the basis of population, into not less than two nor more than five classes. Such general laws shall restrict the powers of such cities, towns and villages to borrow money and contract debts, and shall limit the rate of taxes for municipal purposes, in accordance with section one, article ten of the constitution of the State of West Virginia. Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to its municipal affairs: Provided, That any such charter or amendment thereto, and such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this constitition or the general laws of the state then in effect, or thereafter, from time to time enacted."

It will be noted that it provides that no local or special law shall hereafter be passed incorporating cities, towns, or villages, or amending their charters; and that the Legislature shall provide, by general law, for the incorporation and government of all cities, towns and villages. Chapter 56 of the Acts of the Legislature, 1937, does nothing more than provide for the amendment or adoption of charters by existing towns of a population of more than two thousand. We have searched in vain for any provision which would authorize the incorporation of towns and cities of more than two thousand population, and certainly there is nothing in that act which authorizes any action in respect to towns of less than two thousand population. The Home Rule Amendment provides that, under the general laws therein provided for, the electors of each municipal corporation wherein the population exceeds two thousand shall have the power and authority to frame and adopt or

amend the charter of such corporation. While the Legislature had full power, under the Home Rule Amendment, to legislate with respect to towns of less population than two thousand, it is clear that it did not do so by Chapter 56 of the Acts of 1937, and that it left intact the provisions of Article 2 of Chapter 8 of the Code, retaining the authority to provide for the incorporation of towns and cities with a population of two thousand or more, although it apparently did not exercise that authority. The question whether the circuit court has any power to deal with the incorporation of a town of more than two thousand is, we think, settled by the case of *St. Marys* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176. Section 39 of Article VI of the Constitution of this State provides that: "The Legislature shall not pass any local or special laws in any of the following enumerated cases, that is to say, for * * * incorporating cities, towns or villages, or amending the charter of any city, town or village, containing a population of less than two thousand." In the above cited case Judge Brannon says that this constitutional provision "prohibits the legislature from incorporating or amending the charters of towns of less than two thousand; but as to those of that population, it reserves such power to the legislature * * *." This holding has never been departed from. The power to incorporate communities of more than two thousand population now rests, as it has always rested, with the Legislature, and circuit courts do not now have, and have never had, the power to incorporate a municipality of that population.

We therefore reverse the order of the Circuit Court of Kanawha County dismissing the petition filed in this case, and remand the proceeding to that court for such further action, not inconsistent with the opinions herein expressed, as it may, in its discretion, be advised to take, respecting the incorporation of the Town of Chesapeake as a municipal corporation.

*Reversed and remanded.*