331 S.E.2d 846

**H. Harvey OAKLEY, C.W. Ferguson, III, and Elsa Louise Kingdon as widow and executrix of the estate of Arthur R. Kingdon**

v.

**Glen B. GAINER, A. James Manchin, and Martha Merritt.**

**No. 16584.**

Supreme Court of Appeals of West Virginia.

May 31, 1985.

Larry Harless, Morgantown, for petitioners.

Thomas Trent, Asst. Atty. Gen., Charleston, for respondents.

CHAFIN and STEPHENS, Justices:

The petitioners, the Honorable H. Harvey Oakley, formerly Judge of the Circuit Court of Logan County, the Honorable C.W. Ferguson, III, formerly Judge of the Circuit Court of Wayne County, and Elsa Louise Kingdon, widow and executrix of the estate of Arthur R. Kingdon, formerly Judge of the Circuit Court of Wyoming County, seek a writ of mandamus compelling respondents Glen B. Gainer, Jr., State Auditor, A. James Manchin, State Treasurer, and Martha Merritt, Workers' Compensation Commissioner, as members of the West Virginia Public Employees Insurance Board, to credit accumulated leave toward extended insurance coverage under West Virginia Code § 5–16–12 (Supp.1984). In addition, petitioner Kingdon seeks a writ of mandamus compelling respondent Gainer to issue warrants to respondent Manchin for the payment of widows' retirement benefits under West Virginia Code § 51–9–6b (1981 Replacement Vol.). Following a brief discussion of the appropriateness of mandamus in this proceeding, we will address each of the two issues presented.[1]

1. In order to provide some procedural perspective, a brief recitation of the history of this case will be beneficial. On January 8, 1985, a petition for a writ of mandamus was filed with the Clerk of the Supreme Court of Appeals, and a rule to show cause was issued against the respondents, returnable on January 22, 1985. On January 16, 1985, each member of the Court having individually recused himself, a special panel was assigned pursuant to West Virginia Constitution art. VIII, § 2, to hear and determine the issues presented, and the case was continued until February 6, 1985. Initially, the special panel consisted of five newly elected circuit judges, the Honorables W. Craig Broadwater, Robert Chafin, Daniel B. Douglass, John Hrko, and Thomas W. Steptoe, Jr. On January 29, 1985, the respondents filed a motion for recusal of the special panel, citing their potential interest in the benefits that are the subject of this action. After Judge Broadwater voluntarily recused himself, the Court's original assignment order was amended to substitute newly elected Circuit Judge Booker T. Stephens. Argument on the motion to recuse was then

■ The criteria for the award of extraordinary relief by writ of mandamus are well established in this jurisdiction. "A writ of mandamus will not issue unless three elements coexist—(1) a clear right in the petitioner to the relief sought; (2) a clear legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969); *see also Allen v. Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99, 105 (1984), and cases cited therein; *Reed v. Hansbarger,* 173 W.Va. 258, 314 S.E.2d 616, 619–20 (1984), and cases cited therein. The first two elements of this formula require an analysis of the legal rights and duties of the respective parties. As to the third element, there is no specific contention by the respondents that an adequate alternative remedy exists for the petitioners in this case, and we are unable to identify any. Accordingly, we must analyze the respective rights and duties of the parties to this action under each of the issues presented in order to determine the appropriateness of the issuance of a writ of mandamus in this case.

## I

In 1971, the West Virginia Legislature created the public employees insurance system. *See* West Virginia Acts, 1st Ex.Sess., Ch. 14; West Virginia Code §§ 5–16–1–19 (1979 Replacement Vol. & Supp.1984). West Virginia Code § 5–16–1 (1979 Replacement Vol.) provides that, "[I]t is the express intent of the legislature to encourage and promote a uniform partnership relation between all employers and employees participating in the insurance plan or plans formulated under the provisions of this article and to hereby declare same to be a public purpose." The term "employer" is defined under West Virginia Code

§ 5–16–2(4) (1979 Replacement Vol.) as "the State of West Virginia, its boards, agencies, commissions, departments, institutions or spending units...." The term "employee" is defined under West Virginia Code § 5–16–2(2) (1979 Replacement Vol.) as "any person, including elected officials, who works regularly full time in the service of the State of West Virginia...." Accordingly, it is uncontroverted that all judicial officers are included and eligible to participate under the West Virginia Public Employees Insurance Act.

In 1984, the Legislature amended West Virginia Code § 5–16–12 (Supp.1984) to provide that:

When a participating employee is compelled or required by law to retire before reaching the age of sixty-five, or when a participating employee voluntarily retires as provided by law, the employee's accrued annual leave and sick leave, if any, shall be credited toward an extension of the insurance coverage provided by this article, according to the following formulae: Such insurance coverage for a retired employee shall continue one additional month for every two days of annual leave or sick leave, or both, which the employee had accrued as of the effective date of his retirement. For a retired employee, his spouse and dependents, such insurance coverage shall continue one additional month for every three days of annual leave or sick leave, or both, which the employee had accrued as of the effective date of his retirement.

The effective date of this extended insurance benefits amendment was July 1, 1984. Two days later, on July 3, 1984, the Supreme Court of Appeals, by administrative order, promulgated an annual/sick leave policy, which provided, in relevant part, that:

The Court undertook an examination of a leave policy for constitutional judicial of-

---

held on February 6, 1985. Subsequently, Judge Douglass voluntarily recused himself, and newly elected Circuit Judge J. Ned Grubb was appointed to replace him. The remainder of the panel, being of the opinion that the issue of disqualification was controlled by the "rule of necessity" as articulated by the Court in *Wagon-*

*er v. Gainer,* 167 W.Va. 139, 279 S.E.2d 636, 639–40 (1981), particularly in light of the remoteness of the asserted interests on which the motion for recusal was based, determined that recusal was inappropriate, and final arguments on the merits of the petition were held on March 29, 1985.

ficers. (This leave policy is to provide for computation of retirement insurance benefits under H.B. 1429 and for other purposes.)

After discussion, the Court adopted a single personal/sick leave category of leave, and provided the following annual accumulations:

| | | |
|---|---|---|
| Magistrates | — | 36 days; |
| Circuit Judges (and the Clerk and Administrative Director) | — | 48 days; |
| Justices | — | 60 days; |

Justices' and judges' leave is chargeable only in term.

The Administrative Director was instructed to request a statement of personal/sick leave taken to July 1, 1981, from each judge and magistrate, relying on the time sheets submitted by judges and magistrates since July 1, 1981.

The effective date for beginning computations was fixed at January 1, 1977.

Under this policy, the petitioners assert that, at the time of their retirement on December 31, 1984, each had accumulated more than one hundred personal/sick leave days. The respondents, however, who comprise the public employees insurance board under West Virginia Code § 5-16-5 (1979 Replacement Vol.), refuse to extend the health insurance of any of the petitioners, contending that the Legislature did not intend to extend those expanded insurance benefits to public officials, but intended only that the amendment apply to public employees. Furthermore, the respondents contend that the Court's adoption of the new personal/sick leave policy exceeded the scope of their inherent administrative powers under West Virginia Constitution art. VIII, §§ 3, 8.

We firmly reject the respondents' invitation to endeavor an analysis of the legislative intent in enacting the extended insurance benefits provision. One of the most well-settled rules of statutory construction is that, "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); *see also* Syl. pt. 1, *State v. Warner*, 172 W.Va. 142, 308 S.E.2d 142 (1983); Syl. pt. 2, *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981). The term "employee," as noted, is clearly defined in the Public Employees Insurance Acts as "including public officials." Indisputably, judicial officers, including the petitioners, are "public officials," and have participated in the public employees insurance system since its inception without controversy. Furthermore, the extended insurance benefits provision clearly covers any "participating employee." Accordingly, under the plain language of the statute, any participating public official, including judicial officers, is entitled to the benefit of the extended insurance provision.

■ Nevertheless, we must hold that, despite the plain meaning of the extended insurance benefits provision, the statute is invalid as it applies to all elected public officials, including judicial officers. It has been noted that:

> In general, the right of compensation is not dependent on the exercise of the functions or on the performance of duties of the office. Hence, in the absence of constitutional or statutory provision to the contrary, the fact that officers have not performed the duties of the office does not deprive them of the right to compensation, provided their conduct does not amount to an abandonment of the office. Thus, it has been held that the right of an officer to his salary is not necessarily impaired by occasional or protracted absence from his office, or a temporary incapacity to perform the duties of the office, as a result of illness or other extenuating causes or by the neglect of his duties.

67 C.J.S. *Officers* § 219(b), at 708–09 (1978) [Footnotes omitted]. Similarly, in Syllabus Point 1 of *State ex rel. Godby v. Hager*, 154 W.Va. 606, 177 S.E.2d 556 (1970), the Court held that, "The salary of a public officer is an incident to the office and the legal right to receive or enforce its payment with the title to the office."

In a remarkably similar case, the New York Court of Appeals, in *Bookhout v. Levitt*, 43 N.Y.2d 612, 403 N.Y.S.2d 200,

374 N.E.2d 111 (1978), was confronted with a challenge by four retired elected public officials, including one county judge, to the refusal by the administrative head of the state employees retirement system to credit their accumulated sick leave in the calculation of their pension benefits pursuant to state statute. Earlier, the lower court, although holding that these elected officials were entitled to credit for accumulated sick leave, held that, consistent with the established administrative practice, elected public officials were not entitled to credit for accumulated vacation time. *Bookhout v. Levitt,* 54 A.D.2d 477, 478–481, 389 N.Y. S.2d 164, 165–66 (1976). Only the administrator appealed the decision of the lower court, and, therefore, the only issue presented to the New York Court of Appeals was the validity of crediting accumulated sick leave in calculating pension benefits for elected public officials. Although the statute in question made no distinction between elected and nonelected employees covered under its provisions, the New York Court of Appeals held that the distinction precluded credit for accumulated sick leave for elected public officials:

> The offices of County Judge, Surrogate, Judge of the Family Court, County Clerk, and County Treasurer are elective.... The incumbent of each of these offices continues to hold office until events such as his or her death, resignation, removal from office and various other reasons.... Each of the petitioners, as a officer of a municipality whose salary is fixed by law, is entitled to that salary, not as under a contract of employment, but as an incident of the respective office, and cannot be deprived of that salary so long as he or she rightfully holds that office.... So long as each of them continued in office, he or she could not be deprived of the compensation attached thereto even if prevented by temporary incapacity, such as sickness, from performing the duties of the office.... Of course, sickness involving a serious physical or mental defect resulting in actual disability to perform the duties of an office may furnish cause for removal.... [T]he subject of unused sick leave is inimical and not relevant to elected holders of public office such as petitioners who are head of their own departments or offices and who are permitted within broad limits to determine their own hours of work.... They were elected to perform certain exclusive powers and duties required of a County Judge and Judge of the Family Court, Surrogate, County Clerk and County Treasurer for which they received specific compensation.... The mode of exercise of those powers and duties, if authorized and valid, and the time devoted to them, in the absence of such gross neglect as to warrant removal from office, were matters left separately to each of them.... Sick leave is a term and condition of employment ... which is not an attribute of or applicable to public offices held by elected officials. The very nature of petitioners' offices contemplates that the occupants generally were free to take as much or as little time off as they might wish under a schedule they controlled.... Since there was no maximum time allowable for their sick leaves, or more correctly for their absences because of sickness, an instance would not have arisen requiring reimbursement by them for an excess of sick leave taken and, by the same token, credit should not be granted for any claimed unused sick leave. [Citations omitted].

43 N.Y. at 617–619, 403 N.Y.S.2d at 203–04, 273 N.E.2d at 114–15.

Under the legislative extended insurance benefits scheme in the instant proceeding accumulated leave is a precondition to the realization of the benefit granted. The nature of elected public office, however, precludes the imposition and enforcement of mandatory maximum leave on elected public officers. For example, the proposition that the legislature could penalize the governor in any manner for exceeding some prescribed maximum leave is ludicrous. The cure for the dilatory elected public officer whose conduct falls short of that required by law for suspension or removal is not the pocketbook but the ballot box. Because of the invalidity of the underlying

legislation upon which the promulgation of the judicial leave policy was based, irrespective of the inherent authority to adopt such a policy, the petitioners are precluded from obtaining the benefits sought, and, therefore we must deny their petition for writ of mandamus.

## II

The Honorable Arthur R. Kingdon served as Circuit Judge of Wyoming County from January 1, 1975 through December 31, 1984, having decided, at age seventy-one, not to seek reelection. Previously, he had served on active duty in the United States Army Air Force from November 21, 1940 through July 25, 1945, and as attorney for the City of Mullens from January 1, 1954 through December 31, 1955. Therefore, Judge Kingdon had a total of sixteen years and seven months of combined military, governmental, and judicial service. On November 9, 1984, Judge Kingdon directed an inquiry to the Administrative Director of the Supreme Court of Appeals concerning his potential transfer into the judicial retirement system. On December 12, 1984, the Administrative Director forwarded a letter to Judge Kingdon containing a certification of retirement service credit to which he was entitled and notifying him that he must tender a contribution of $28,034.53 to the judicial retirement fund in order to transfer from the public employees retirement system of which he was then a member. On December 14, 1984, Judge Kingdon verified the accuracy of the Administrative Director's certification of retirement service credit and forwarded a check for $28,034.53 for the purpose of transferring from the public employees retirement system to the judicial retirement system. On December 17, 1984, the Administrative Director forwarded his certification of sixteen years and seven months' retirement service credit to respondent Gainer, together with an itemization of this service. In addition, the Administrative Director forwarded Judge Kingdon's check, which represented the contribution necessary to transfer Judge Kingdon from the public employees retirement system to the judicial retirement system, together with an itemization of this contribution, which corresponded to the aggregate prior periods of military, governmental, and judicial service. The Administrative Director's letter requested respondent Gainer to enroll Judge Kingdon in the judicial retirement system.

Inexplicably, although respondent Gainer endorsed and deposited Judge Kingdon's check, he refused to credit him with his certified retirement credit. Instead, he refunded Judge Kingdon's contribution in a check drawn on the state treasury. On January 4, 1985, Judge Kingdon notified the Governor that he had recently retired and requested that the necessary documentation be certified to the respondent Gainer in order that he could begin to receive his retirement benefits. On January 10, 1985, the Governor issued a written order certifying that Judge Kingdon had passed the age of sixty-five, had accrued judicial service credit of not less than sixteen years, and was eligible to receive retirement benefits from the judicial retirement fund commencing on January 1, 1985. Respondent Gainer, however, remained noncompliant, and, on March 25, 1985, Judge Kingdon died, without respondent Gainer having issued any warrants for the payment of his judicial retirement benefits. Furthermore, respondent Gainer continues to refuse to authorize the payment of either these benefits or the annuity due Judge Kingdon's widow, both as executrix of his estate and in her own right.

West Virginia Code § 51-9-6 (1981 Replacement Vol.) provides that, "[A]ny person ... who has served as judge ... for a period of sixteen full years or more ... and shall have reached the age of sixty-five years ... shall, upon a determination and certification of his eligibility as provided in ... [§ 51-9-9] ... be paid from the [judges' retirement] fund annual retirement benefits...." Unquestionably, Judge Kingdon had passed the age of sixty-five. The only issue is whether he had sixteen full years or more of creditable judicial service. Because Judge Kingdon had actually served as circuit judge for ten years at the time of his retirement, his

eligibility for retirement benefits turns solely upon whether his prior military and governmental service are to be credited for the purpose of qualifying for such benefits.

■ Petitioner Kingdon maintains, and we agree, that the Court's recent decision in *In re Dostert*, 174 W.Va. 258, 324 S.E.2d 402 (1984) thoroughly disposes of the issue of Judge Kingdon's eligibility for retirement benefits. First, as to the issue of Judge Kingdon's military service credit, the Court held in *In re Dostert*, 174 W.Va. at 273, 324 S.E.2d at 417, "[M]ilitary service, or its equivalent, rendered during a period of compulsory military service, 'shall be considered as served' under West Virginia Code § 51–9–6 (1981 Replacement Vol.), for the purpose of determining eligibility for disability and retirement benefits." [Footnotes omitted]. Second, as to the issue of Judge Kingdon's governmental service credit, this Court held in *In re Dostert*, 174 W.Va. at 274, 324 S.E.2d at 418, "[S]ervice to this State or any of its political subdivisions 'shall qualify as years of service' under West Virginia Code § 51–9–6 (1981 Replacement Vol.)." [Footnote omitted]. Furthermore, with respect to this second issue of governmental service credit, the Court in *In re Dostert*, 174 W.Va. at 274 n. 33, 324 S.E.2d at 418 n. 33, held that, "[G]overnmental service in this State includes full or part time service, whether by employment, election, or appointment, to the State of West Virginia or any of its political subdivisions." Clearly, under the relevant criteria, Judge Kingdon had accumulated sixteen years and seven months of creditable service under the judicial retirement system statute as construed by the Court in *In re Dostert*.

■ Under West Virginia Code § 51–9–5 (1981 Replacement Vol.), the sole requirement for transfer between the public employees retirement system and the judicial retirement system is that, "[A]ny judge who has [previously] elected not to contribute shall ... be permitted to become eligible for retirement benefits by paying into the judges' retirement fund all contributions he would have been required to pay into the fund, together with interest thereon at four percent, if he had not previously

elected not to contribute." Furthermore, the Court in *In re Dostert*, 174 W.Va. at 274, 324 S.E.2d at 418, noted that, "[A]ll credited service in the judicial retirement system must correspond to contributions made to the fund by judges claiming such credit." [Footnote omitted]. Therefore, the Court developed a formula for calculating the level of contribution necessary to claim retroactive service credit for periods in which the individual claiming such credit was not a member of the judiciary. *See In re Dostert*, 174 W.Va. at 274–275, 324 S.E.2d at 418 n. 35. The Administrative Director's calculation of the contributions necessary to credit Judge Kingdon with the sixteen years and seven months of judicial service conformed to both the statutory and decisional law and totalled $28,034.53, which was forwarded by check to respondent Gainer. Under the judicial retirement system, the state auditor is merely "the fiscal officer responsible for the records and administration of the fund...." West Virginia Code § 51–9–3 (1981 Replacement Vol.). With respect to transfers between the respective retirement systems in which members of the judiciary may participate, his duty is merely to receive the contributions necessary to transfer and to deposit these contributions in the appropriate fund. In the instant proceeding, respondent Gainer had a duty to accept Judge Kingdon's contribution necessary to transfer from the public employees retirement system to the judicial retirement system, and to deposit this amount in the judicial retirement fund.

In order to avoid the substantial harm that may result from delay in the payment of retirement benefits to qualified judicial officers or their widows or widowers, the mechanism for obtaining those benefits must necessarily be an expeditious one. The process begins with the Administrative Director of the Supreme Court of Appeals. As the Court noted in *In re Dostert*, 174 W.Va. at 278, 324 S.E.2d at 422:

> [T]he Administrative Director of the Supreme Court of Appeals is the constitutional judicial officer charged by this Court with the maintenance, administration, and certification of judicial salary and retirement records. It is his duty to certify all service credit for judges of

courts of record to proper administrators, specifically including those responsible for the administration of the respective retirement systems in which judges may participate. It is his duty to assist judges of courts of record in calculating the level of contribution necessary to obtain the credit desired from the respective retirement systems. It is his duty to calculate the employers' contribution necessary to transfer credit between the systems based upon what the employers' contribution would have been if the judge who desires transfer had been a member of the system into which he or she is transferring. Finally, it is his duty to calculate contributions required of judges in either system who wish to claim credit for prior governmental or military service.

With respect to retirement under the judicial retirement system, the process terminates with the Governor. West Virginia Code § 51–9–9 (1981 Replacement Vol.) provides that:

> Before any person shall be entitled to retirement benefits under the provisions hereof, he shall submit proof of his eligibility for such benefits to the governor.... Thereupon the governor shall make such investigation as he shall deem advisable and, if the governor shall determine that such person is entitled to retirement benefits under the provisions hereof, the governor shall ... certify such facts and the amount of retirement benefits to be paid to said retired judges by a written order to be filed in the office of the secretary of state. The secretary of state shall thereupon file a certified copy of said order with the State auditor.

After this determination, West Virginia Code § 51–9–11 (1981 Replacement Vol.) mandates that, "The retirement benefits and retirement pay ... shall be paid in equal monthly installments upon the warrant of the state auditor drawn on the judges' retirement fund."

In the present case, the Administrative Director certified Judge Kingdon's military, governmental, and judicial service to the proper administrators; calculated the level of contribution necessary to obtain the credit desired and to transfer such credit into the judicial retirement system; and forwarded this information, together with the necessary contribution, to respondent Gainer. Further, after appropriate consideration and investigation, the Governor certified Judge Kingdon's eligibility for retirement benefits under the judicial retirement system to the Secretary of State. At that point, it became respondent Gainer's duty, under West Virginia Code § 51–9–11 (1981 Replacement Vol.), to issue the appropriate warrants on the judicial retirement fund for payment of Judge Kingdon's retirement benefits.

Respondent Gainer offers no coherent justification for his refusal to comply with the Governor's determination of Judge Kingdon's eligibility. Ostensibly, he desires that we engage in a pursuit commonly referred to in certain circles as "Monday morning quarterbacking," that we second-guess the legal analysis of the Court in *In re Dostert*. As the Court recognized in *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 1028–29, 207 S.E.2d 169, 173 (1974), "The principle of stare decisis ... is firmly rooted in our jurisprudence. Uniformity and continuity in law are necessary." Although the Court in *Dailey v. Bechtel Corp.*, 157 W.Va. at 1029, 207 S.E.2d at 173, also recognized that "the principle of stare decisis admits of exception," it noted that, "deviation from its application should not occur absent some urgent and compelling reason." *See also Adkins v. St. Francis Hospital*, 149 W.Va. 705, 718, 143 S.E.2d 154, 162 (1965). The applicability of the concept of stare decisis to the present action is strengthened by the contemporaneousness of the decision in *In re Dostert*. Again, as the Court noted in *Dailey v. Bechtel Corp.*, 157 W.Va. at 1029, 207 S.E.2d at 173, "If the doctrine of stare decisis is to play any judicial role ... we cannot overrule a decision so recently rendered without any evidence of changing conditions or serious judicial error." Similarly, the Court in *State ex rel. Brotherton v. Blankenship*, 158 W.Va. 390, 420, 214 S.E.2d 467, 487 (1975), noted that, "[I]n regard to this particular attempt to

re-litigate an issue recently settled by explicit ruling of this Court, it is difficult to be more precise and specific ... without specifying the law to an extent that it thereby loses its precedential value under the doctrine of *stare decisis."* Furthermore, the need for certainty with respect to property interests, such as entitlement to judicial retirement benefits, has weighed heavily in favor of application of the doctrine of stare decisis. As the Court recently noted in *Signaigo v. N & W Ry. Co.,* 171 W.Va. 547, 301 S.E.2d 178, 181–82 (1982), *quoting In Re Proposal To Incorporate Town of Chesapeake,* 130 W.Va. 527, 536, 45 S.E.2d 113, 118 (1947):

"We do not mean to be understood as contending for the application of the rule of *stare decisis* to all cases, as we are fully advised of the changes which come about requiring the overruling of cases decided under different conditions, or cases wherein, in the opinion of the Court, a plainly unsound ruling has been made. But we are of opinion that, where property or other substantial rights have been acquired on the strength of court decisions, and where to overrule such decisions would create confusion and lead to litigation ... the doctrine should be applied."

Similarly, in *Hock v. City of Morgantown,* 162 W.Va. 853, 856, 253 S.E.2d 386 (1979), the Court stated that, "Predictability is at the heart of the doctrine of *stare decisis,* and regardless of what we think of the merits of this case, we must be true to a reasonable interpretation of prior law in the area of property where certainty above all else is the preeminent compelling public policy to be served."

In their abundant wisdom, the framers of our state constitution provided that, "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others...." West Virginia Constitution art. V, § 1. The Court has repeatedly recognized that this provision calls not for interpretation or construction, but for obedience, *see State ex rel. State Building Comm'n v. Bailey,* 151 W.Va. 79, 84, 150 S.E.2d 449, 452

(1966); *State ex rel. County Court v. Demus,* 148 W.Va. 398, 401, 135 S.E.2d 352, 355 (1964); *State ex rel. Richardson v. County Court,* 138 W.Va. 885, 890, 78 S.E.2d 569, 573 (1953); *Hodges v. Public Service Commission* 110 W.Va. 649, 655, 159 S.E. 834, 836 (1931), and that it must be strictly construed and closely followed, *see State ex rel. Quelch v. Daugherty,* 306 S.E.2d 233, 235 (W.Va.1983); Syl. pt. 2, *State ex rel. Steele v. Kopp,* 172 W.Va. 329, 305 S.E.2d 285 (1983); Syl. pt. 1, *State ex rel. Barker v. Manchin,* 172 W.Va. 329, 279 S.E.2d 622 (1981). The Court also recognized in *State ex rel. Joint Committee on Government and Finance v. Bonar,* 159 W.Va. 416, 419, 230 S.E.2d 629, 630 (1976), that, "Inherent in the constitutional concept of separation of powers is the acknowledgement that powers granted and exercised by each department separately must in some way be conjoined to produce a governmental entity."

Respondent Gainer's conduct in this litigation does not reflect this recognized need for interdepartmental cooperation, but rather, borders on the anarchical. He has refused to issue the warrants necessary for payment of Judge Kingdon's, and then his widow's, retirement benefits, based not upon principle, but upon personal caprice. His position basically is that he disagrees with the Court's decision in *In re Dostert,* and that he refuses to recognize its validity. West Virginia Constitution art. VIII, § 1, however, provides that, "The judicial power of the State shall be vested solely in a supreme court of appeals and in the circuit courts," not with the State Auditor. The indefensibility of respondent Gainer's position is further amplified by his participation in the *In re Dostert* litigation. The Court noted in *In re Dostert,* 174 W.Va. at 264–265, 324 S.E.2d at 408, that, "[B]ecause of their statutory duties, copies of the invertenor's petition were ordered to be transmitted to the Governor, *the Auditor,* the Treasurer, and the Attorney General, with a request that they file memoranda setting forth their positions with respect to the issued raised therein." [Emphasis added] [Footnotes omitted]. As the Court further noted in *In re Dostert,* 174 W.Va. at

265 n. 11, 324 S.E.2d at 408 n. 11, "In response, the Attorney General filed a memorandum on his own behalf and on behalf of the State Treasurer and *the State Auditor....*" [Emphasis added]. Thus, respondent Gainer had ample opportunity to place his views on the issues presented in *In re Dostert,* and, in fact, through the Attorney General, did present those views. We note that had respondent Gainer been made a formal party to the *In re Dostert* litigation, this johnny-come-lately approach would most likely be precluded by the doctrines of res judicata or collateral estoppel. *See generally Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983).

■ In any event, it has been conclusively demonstrated that, prior to Judge Kingdon's death, he had a legal right to benefits under the judicial retirement system and respondent Gainer had a duty to authorize their payment. Furthermore, under West Virginia Code § 51-9-6b (1981 Replacement Vol.), "There shall be paid ... an annuity to a widow of a judge, who, at death, is eligible for retirement benefits...." Therefore, petitioner Kingdon has a legal right to widows' benefits under the judicial retirement system and respondent Gainer has a duty to authorize payment. Finally, under Syllabus Point 4 of *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982), which provides, "In mandamus proceedings where a public officer willfully fails to obey the law, attorney fees will be awarded," petitioner Kingdon is entitled to reasonable attorney fees and costs expended in the prosecution of her claim for her late husband's and her own retirement benefits to be paid by respondent Gainer from funds appropriated for the administration of his office.

For the foregoing reasons, petitioners Oakley, Ferguson and Kingdon's petition for writ of mandamus against the Public Employees Insurance Board is hereby denied; and petitioner Kingdon's petition for a writ of mandamus against respondent Gainer for payment of her late husband's retirement benefits to the time of his death, her widows' benefits commencing at his death, and her attorney fees and costs as-sociated with obtaining the same is hereby granted, and respondent Gainer is hereby directed to accept the amount of $28,034.53 from petitioner Kingdon as the contribution necessary for her late husband's transfer from the public employees retirement system to the judicial retirement system and to deposit the same into the judges' retirement fund.

Denied in part; granted in part.

HRKO and GRUBB, Justices, dissenting:

Judges Hrko and Grubb concur with the majority opinion as to Count II of the Petition for a Writ of Mandamus; however, dissent from the majority decision to deny the Writ of Mandamus as to Count I of said Petition. We would grant the petition for all purposes.

*W. Va. Const., art. 8, § 8* provides, "Under its inherent rule-making power, which is hereby declared, the Supreme Court of Appeals shall, from time to time, prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof, and the Supreme Court of Appeals is authorized to censure or temporarily suspend any justice, judge or magistrate having the judicial power of the state, including one of its own members, for any violation of any such code of ethics, code of regulations and standards or to retire any such justice, judge or magistrate who is eligible for retirement under the West Virginia judge's retirement system (or any successor or substituted retirement system for justices, judges and magistrates of this state) and who, because of advancing years and attendant physical or mental incapacity, should not, in the opinion of the Supreme Court of Appeals, continue to serve as a justice, judge or magistrate".

Under this section, administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with

them. *Stern Bros. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 *(1977)*.

This provision of our constitution establishes the inherent rule-making power of the Supreme Court and actually permits the judicial branch of the government to function free from influence or control of the legislative and executive branches.

It provides for administration of our court system that runs the gamut from prescribing a judicial code of ethics to approving payment for paperclips purchased for a judge's office in the smallest county of West Virginia. Therefore, we are of the opinion that it also provides for establishing a leave policy for circuit judges.

In an administrative conference on July 3, 1984, the Supreme Court established a policy giving circuit judges 48 days annual leave. The effective date for beginning leave computations was fixed at January 1, 1977.

*W.Va.Code, ch. 5, art. 16, § 2 (Michie 1979)*, referred to as part of the "West Virginia Public Employee's Insurance Act", defines an employee as any person, including elected officers, who works regularly full time in the service of the State of West Virginia. This provision was enacted prior to 1979. We believe circuit judges are employees according to the definition set forth above.

On July 1, 1984, the legislature amended the act to provide "When a participating employee is compelled or required by law to retire ... that employee's accrued annual leave ... shall be credited toward an extension of the insurance coverage provided by this article according to the following formulae: Such insurance coverage for a retired employee shall continue one additional month for every two days of annual leave or sick leave or both, which the employee had accrued as of the effective date of his retirement". *W.Va.Code, ch. 5, art. 16, § 3 (Michie Supp.1979)*.

In short, we are of the opinion that circuit judges are state employees, the Supreme Court of Appeals has the right to establish leave days for circuit judges, and state employees have the right to an extension of insurance benefits according to the formulae set forth above.

Therefore, we would also award the Writ of Mandamus in according with Count I of the Petition.

STEPTOE, Justice, dissenting from the holding of the majority on Part II:

At the outset, it is appropriate to note that if *In Re Dostert*, 174 W.Va. 258, 324 S.E.2d 402 (1984) qualifies for the application of the doctrine of *stare decisis*, then it indeed "... thoroughly disposes of the issue of Judge Kingdon's eligibility for retirement benefits." (See majority opinion) It is, however, the application by the majority of the doctrine of *stare decisis* to *In Re Dostert* that compels me to respectfully dissent from the majority holding of my colleagues on Part II.

An analysis of *In Re Dostert* is appropriate. That case involved an extraordinary judicial disciplinary proceeding under Rule II(J) of the Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates. The Court explains how it gets into the retirement issue with the following notation: "As previously noted, Judge Dostert's deteriorating physical condition has resulted in a claim for workers' compensation disability benefits and recusal from the exercise of his judicial duties. Therefore, issues involving the interpretation of our judicial retirement statutes and West Virginia Constitution, Article VIII, Section 8 are raised." *In Re Dostert*, 174 W.Va. at 265, 324 S.E.2d at 409. The Court then proceeded to determine that a portion of West Virginia Code 51-9-6 which granted military service credit on retirement eligibility to judges who served in the military during their terms of office and also granted governmental service credit on retirement eligibility to judges who were former prosecuting attorneys was unconstitutional. The military service credit was adjudged to be unconstitutional on the basis of the constitutional prohibition against dual office-holding. The majority held that service in the military, whether as a private or as a general, by a Judge during the term of his or her

office constituted the holding of another "... office, or accept(ing) any appointment or public trust under this or any other government" within the meaning of West Virginia Constitution, Article VIII, Section 7. The credit for service as a prosecuting attorney was adjudged to be unconstitutional on the basis that it violated the prohibition of West Virginia Constitution, Article VI, Section 39, which provides that "... in no case shall a special act be passed, where a general law would be proper." The *In Re Dostert* majority elaborated that "We fail to see any relationship between the exercise of prosecutorial power and the exercise of judicial power which supports this exclusive grant of credit." *In Re Dostert*, 174 W.Va. at 268, 324 S.E.2d at 411.

Having then declared the only special credit provisions of the judicial retirement statutes to be unconstitutional, the Court proceeded to presume a "constitutional" legislative intent regarding special credits towards retirement for judicial officers. By this exercise, the Court created certain substantive property rights for judicial officers, including:

1. A credit for military service not performed during term of office; and
2. A credit for service to the State or any of its political subdivisions, including part-time service.

In so doing, the Court found a "... fundamental constitutional interest in attracting and retaining professional talent in order to maintain the integrity of an independent judiciary. As a means of fulfilling this fundamental constitutional interest, the West Virginia Constitution in Article VIII, Section 8 constitutionalizes judicial retirement and classifies participants who obtain certain irrevocable rights in the judicial retirement system. There are several important public interests that support this constitutional recognition of judicial retirement. *As an integral part of judicial compensation,* judicial retirement systems perform an important role in the attraction and retention of professional talent that might otherwise remain in the lucrative practice of law." (Emphasis added) *In Re Dostert*, 174 W.Va. at 270 and 271, 324 S.E.2d at 413 and 415.

It is absolutely uncontroverted that *In Re Dostert* renders the Judicial Retirement System far more attractive and substantially liberalizes the availability of benefits which are already more "lucrative" than those available through the public employees retirement system. By so doing, the Court materially embellished, altered and expanded the compensation of Justices and Circuit Judges. It did so without the benefit of law.

West Virginia Constitution, Article VIII, Section 7 expressly vests the exclusive determination of compensation for Justices, Judges and Magistrates in the Legislature. The pertinent part thereof states that: "Justices, Judges and Magistrates shall receive salaries *fixed by law* ... and they shall receive expenses *as provided by law."* (Emphasis added)

West Virginia Constitution, Article V, Section 1 provides that, "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; ..." This Court in *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981), recognized that, "This constitutional provision which prohibits any one department of our state government from exercising the powers of the others is not merely a suggestion, it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." *Supra,* 167 W.Va. at 167, 279 S.E.2d at page 630. The matter of the compensation of judicial officers being expressly and exclusively vested in the Legislature by the West Virginia Constitution, the same may not be embellished, altered or expanded by the Judiciary regardless of the basis of judicial analysis until such time as the people of West Virginia, in their wisdom, may choose to so provide by amendment to their constitution. Even the inherent power of the Judiciary must yield to the constitutional mandate of separation of powers.

The doctrine of *stare decisis* is a foundation of our judicial system because it provides a requisite uniformity, predictability and continuity in the law. But "... the principle of *stare decisis* admits of excep-

tion, ..." which permits and even requires "... deviation from its application ..." if there exists "... some urgent and compelling reason ..." or if there is "... evidence of changing conditions or serious judicial error." *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169, at 173 (1974). I urge that the portion of *In Re Dostert* which is applicable to the case before this panel represents serious judicial error in that its holding clearly violates the constitutional doctrine of the separation of powers and, therefore, that there is an urgent and compelling reason for this Court not to apply the doctrine of *stare decisis* to it.

For the reasons stated above, I would deny the Writ of Mandamus sought by Elsa Louise Kingdon on Count II of the Second Amended Petition for a Writ of Mandamus.